85 So.3d 612 (2012)
Laurie JENKINS
v.
Larry G. STARNS.
No. 2011-C-1170.
Supreme Court of Louisiana.
January 24, 2012.
Larry G. Starns, Denham Springs, LA, for Applicant.
Eric Fitzgerald Wright, Sr., for Respondent.
*613 KIMBALL, C.J.
We granted certiorari in this case to determine whether the continuous representation rule, an application of the doctrine of contra non valentem, can apply to suspend the commencement of the one-year peremptive period under La. R.S. 9:5605. For the reasons discussed herein, we reverse the court of appeal and conclude the commencement of the peremptive periods in La. R.S. 9:5605 cannot be suspended by the application of the continuous representation rule.

FACTS AND PROCEDURAL HISTORY
On April 27, 2006, the plaintiff in this matter, Laurie Jenkins, entered into a contract with Chet Medlock whereby Medlock would sell, transfer, and deliver a metal building to Jenkins on or before May 27, 2006. The total price of the project was $25,000, with thirty-three percent, or $8,333.33, due immediately as a deposit for the materials, the second thirty-three percent due upon erection of the steel frame, and the remaining thirty-three percent due upon completion of the project.
After the building was completed, issues arose regarding the quality of work and Jenkins withheld payment of the last installment due under the contract. Jenkins consulted attorney Larry G. Starns, the defendant in this matter, who wrote a letter to Medlock on her behalf, which appears to be in response to a demand by Medlock for the final payment. The letter points out several complaints Jenkins had with the building and states any lawsuit filed by Medlock will be met with a demand for a reduction in the contract price based upon defects in the building. Medlock sued Jenkins for breach of contract on November 28, 2006, seeking the last installment of the contract, $8,333.33, with legal interest and court costs. Jenkins was personally served with the suit on December 4, 2006. Starns was in contact with Medlock's attorney and believed there was an informal agreement for an extension of time to file responsive pleadings. When no answer was filed, Medlock obtained a preliminary default judgment against Jenkins on December 20, 2006, in the amount of $8,333.33 and $230.00 in court costs. The default judgment was confirmed on January 3, 2007. Jenkins was served with a copy of the confirmed default judgment on January 16, 2007.
Jenkins notified Starns of the default judgment and on January 25, 2007, Starns filed a petition to annul the judgment, asserting the entry and confirmation of the default judgment constituted fraud and/or ill practices. Medlock filed declinatory exceptions of insufficiency of service of process and improper venue to the petition to annul. A minute entry shows the exceptions were considered at a hearing on April 16, 2007. Medlock's counsel was personally present and presented argument, but neither Jenkins nor Starns made an appearance in court. The trial court sustained the exceptions on April 23, 2007, dismissing the suit.
Medlock subsequently filed a judgment debtor rule on Jenkins, which was served on Starns. A minute entry confirms the judgment debtor rule was heard on May 12, 2008, and continued until July 7, 2008. In May of 2008, Starns requested reissuance of service on Medlock of the petition to annul judgment. On June 18, 2008, Medlock filed an answer to the petition to annul, denying the allegations of fraud and ill practices therein. On June 27, 2008, Medlock filed a motion for summary judgment, which was heard on July 28, 2008. Starns attended the hearing and the trial court granted the motion, dismissing Jenkins' suit to annul the judgment and awarding Medlock attorney fees. On August *614 28, 2008, Medlock filed a petition for garnishment, seeking $10,464.25, representing the principal amount due plus legal interest, court costs, and sheriff's costs. The trial court issued a judgment of garnishment on September 29, 2008, which was served on Hancock Bank on October 1, 2008. Upon discovery of the loss of funds, Jenkins consulted another attorney and filed suit against Starns for legal malpractice on November 5, 2008.
In her petition for damages, Jenkins alleged the garnishment resulted from Starns' negligent act of failing to file a responsive pleading to Medlock's petition for breach of contract. Jenkins further asserted Starns failed to act as a reasonable, prudent attorney when he failed to appear and defend her at the April 16, 2007, hearing on Medlock's declinatory exceptions to her petition to annul judgment. Starns answered the petition, stating he had talked to Medlock's attorney and was under the impression he would be given an informal extension of time to file responsive pleadings due to the holiday season. Starns was unaware a preliminary default had been entered on December 20, 2006, and confirmed on January 3, 2007. Starns further claimed he did not remember receiving a notice of court for April 16, 2007. Due to his involvement in a separate matter in that division, however, Starns had notified the court he would be in another jurisdiction that day and would be late for court.
Jenkins subsequently filed a motion for judgment on the pleadings, asserting Starns' allegations regarding the informal extension and his failure to appear were not defenses to the suit. Starns opposed the motion, admitting Jenkins may have had some defense against the entire outstanding balance, but arguing he should not be cast in judgment for the full amount of the default judgment. The trial court granted a partial judgment on the pleadings, finding a claim for legal malpractice had been established, but reserved for determination the extent and amount of damages sustained by Jenkins as a result of the malpractice.
Starns subsequently filed an exception of prescription/peremption, asserting Jenkins' malpractice suit was not filed within the one-year peremptive period in La. R.S. 9:5605. The statute provides:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without *615 regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
According to Starns, any acts of malpractice occurred in December of 2006 and/or January of 2007, when the default judgment was confirmed. Since Jenkins was served with a copy of the default judgment on or about January 12, 2007, Starns argued her delays for any damages resulting from the alleged malpractice began to run in January of 2007. Thus, her petition filed on November 5, 2008, was untimely and should be dismissed.
On December 9, 2009, the trial court denied Starns' exception and rendered judgment against Starns in the amount of $9,311.04. In its written reasons for judgment, the trial court first noted this Court in Naghi found both the one-year and three-year periods provided in La. R.S. 9:5605 to be peremptive and therefore, uninterruptible. Naghi v. Brener, 08-2527 (La.6/26/09); 17 So.3d 919. The trial court distinguished Naghi, however, because it did not address when the one-year peremptive period commences and focused instead on whether the filing of an amended petition relates back to the filing of the original petition and defeats a claim for peremption/prescription. 08-2527 at 1; 17 So.3d at 919. Since La. R.S. 9:5605 provides the one-year period commences either on the date of the act or omission or on the date the act or omission is or should have been discovered, the trial court held the doctrine of contra non valentem non currit praescriptio continues to apply. Thus, prescription or peremption would not begin to run against someone if he would not reasonably have known of the occurrence of the alleged negligent act, or if the debtor has done something to hinder or prevent the claimant from obtaining such knowledge.
In the context of a legal malpractice claim, the trial court explained Louisiana courts have adopted the "continuous representation rule" as an application of contra non valentem. Hendrick v. ABC Insurance Co., 00-2054 (La.5/15/01); 787 So.2d 283; Lima v. Schmidt, 595 So.2d 624 (La. 1992). The continuous representation rule essentially provides prescription of an act of legal malpractice does not begin to run while the attorney continues to represent the client and attempts to remedy the act of malpractice. The rule protects the integrity of the attorney-client relationship, allowing the client to rely upon the attorney's professional ability and good faith while affording the attorney an opportunity to remedy his error. Hendrick, 00-2054 at 11, 797 So.2d at 290.
*616 At trial, Jenkins testified she assumed Starns was handling the litigation in the Medlock suit and first realized things had gone "seriously wrong" when she discovered a deficit in her checking account after the garnishment,[1] which was within a year from the date she ultimately filed suit. According to the trial court, the most compelling factor was Starns' continuing efforts to have the default judgment annulled. Applying the continuous representation rule, the trial court found the time spent by Starns trying to get the default judgment annulled suspended the commencement of prescription.[2] The trial court also found Jenkins "discovered" the alleged malpractice when funds were garnished from her account less than a year before suit was filed and therefore, the claim had not prescribed. The trial court awarded Jenkins $9,311.04 in damages, representing $7,965 for half of the amount Jenkins' expert estimated would be required to remedy the defects in the metal building and $1,346.04 for the amount Jenkins was forced to pay Medlock to complete payment of the judgment and obtain authorization for the cancellation of a legal lien and mortgage on her property.
The court of appeal affirmed the trial court's ruling, finding the continuous representation rule serves the interests of justice and can be used to determine when "discovery" commences the one-year prescriptive period under La. R.S. 9:5605.[3] The court of appeal acknowledged that in Naghi, this Court held both the one-year and three-year time limits established in La. R.S. 9:5605 were peremptive periods and could not be suspended. The court of appeal then noted abundant jurisprudence supports the notion that since a peremptive period may not be interrupted, renounced, or suspended, contra non valentem is not applicable to peremptive periods. However, the court of appeal found no error in the trial court's ruling because it did not suspend the running of prescription. Instead, the trial court used an equitable doctrine to suspend the commencement of a prescriptive period to achieve a legally correct and equitable result in conformity with the legislative intent behind the statute.
The court of appeal found the trial court's reliance on Hendrick misplaced because it involved the law in effect before La. R.S. 9:5605 was enacted. However, the court of appeal relied heavily upon Hendrick's discussion of contra non valentem, where this Court stated:
The attorney-client relationship is built on trust and the continuous representation rule as encompassed by contra non valentem seeks to protect clients who rely on that trust and fail to file legal malpractice suits against their attorneys within the appropriate prescriptive period. Contra non valentem does not suspend prescription when a litigant is perfectly able to bring his claim, but fails to do so. When a client does not innocently trust and rely upon his attorney, but rather actively questions his attorney's performance, the client may be denied of the safe harbor of contra non valentem *617 if equity and justice do not demand its application.
00-2403 at 16, 787 So.2d at 293. While recognizing peremptive periods may not be suspended, the court of appeal found the legislature intended the principles of equity, justice, and fairness to apply to La. R.S. 9:5605.
The court of appeal further held this Court has not directly addressed how and when the "discovery" of a malpractice claim under La. R.S. 9:5605 should be interpreted. When analyzing the reasonable date of discovery, the court of appeal stated prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person he or she is a victim of a tort. Citing Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02); 828 So.2d 502, 510. In Campo, this Court explained constructive knowledge is "whatever notice is enough to excite attention and put the injured party on guard to call for inquiry," which is tantamount to notice of "everything to which a reasonable inquiry may lead." 01-2707 at 12, 828 So.2d at 510-11. The court of appeal then cited Carter v. Haygood, a case in which this Court applied the continuous representation rule to suspend prescription on a medical malpractice claim. 04-0646, pp. 19-20 (La.1/19/05); 892 So.2d 1261, 1273.
In the instant case, the court of appeal found Jenkins was put on notice attention and an inquiry was required when she received notice of the default judgment against her. Jenkins made an inquiry of the person she relied on to represent her legal interests and was advised a mistake had been made and would be rectified. Starns attempted to have the judgment annulled but was unsuccessful and Jenkins filed her malpractice claim within a year of her suit to annul being dismissed for the second time in July of 2008. The court of appeal concluded Jenkins' actions were reasonable under the circumstances because to hold otherwise, "we would be holding that, as a matter of law, a reasonable person cannot trust their attorney."
The court of appeal further noted the "discovery" in this case is distinguishable from other jurisprudence regarding "discovery" due to the nature of the relationship between the parties. Not only are there well-established fiduciary duties imposed upon attorneys, but when something may be legally wrong the inquiry must be addressed to an attorney. The court of appeal held it would be problematic and create unnecessary litigation to require all potentially injured parties to consult an attorney other than the one who has already been chosen to represent their interests. The court of appeal concluded Jenkins' suit was timely because the continuous representation rule suspended the commencement of the one-year prescriptive period in La. R.S. 9:5605.
Judge Whipple concurred in the result but assigned separate reasons. Judge Whipple agreed Starns committed malpractice by allowing the entry and confirmation of a default judgment against his client. Judge Whipple further found Starns committed other, subsequent acts of malpractice by failing to have the default judgment set aside and failing to defeat the motion for summary judgment. Judge Whipple concluded these additional acts of malpractice, which ultimately resulted in the seizure of his client's funds to satisfy the garnishment issued against her, occurred less than one year before Jenkins filed suit. Thus, the malpractice suit was timely.
Judge McClendon dissented, finding the one-year peremptive period began to run from January 16, 2007, the date Jenkins received notice of the default judgment against her. The language of La. R.S. *618 9:5605 is clear, as the legislature has expressly stated both the one-year and three-year periods therein are peremptive periods. La. R.S. 9:5605(A) and (B); See Naghi, 08-2527; 17 So.3d 919. Judge McClendon agreed with the majority opinion in finding the act of malpractice was allowing the entry and confirmation of a preliminary default against Jenkins. Based upon the allegations in Jenkins' petition for damages, however, Judge McClendon contends the latest act of malpractice occurred on April 16, 2007, when Starns failed to appear in court to defend the declinatory exceptions in the Medlock suit. Consequently, Judge McClendon disagreed with the majority in concluding the one-year peremptive period did not commence until Starns' suit to annul judgment was dismissed for the second time on July 28, 2008.
Judge McClendon found the application of contra non valentem improper in this case. Judge McClendon reasoned the majority and the trial court's reliance on Hendrick was misplaced because Hendrick applied the law in effect prior to La. R.S. 9:5605. Although the majority opinion distinguished Hendrick for the same reason, it subsequently relied on Hendrick as support for applying the continuous representation rule. Judge McClendon pointed out the Court in Hendrick did not address whether the continuous representation rule can be applied in cases of peremption, where the client is fully aware the act of malpractice has occurred but fails to file suit within one year of the date of discovery.
Judge McClendon instead found Naghi and Reeder v. North, 97-0239 (La.10/21/97); 701 So.2d 1291, more relevant to the instant case. In Reeder, this Court declined to allow the three-year period for filing a legal malpractice suit to be suspended by the continuous representation rule. The Court found as a suspension principle based on contra non valentem, the continuous representation rule cannot apply to peremptive periods because peremptive periods may not be renounced, interrupted, or suspended. Reeder, 97-0239 at 12, 701 So.2d at 1298. Nothing may interfere with the running of a peremptive period and exceptions such as contra non valentem are not applicable. Id. This holding was reaffirmed in Naghi, which held both the one-year and three-year periods for filing a legal malpractice suit under La. R.S. 9:5605 are peremptive periods. Naghi, 08-2527 at 11, 17 So.3d at 926. Judge McClendon noted the majority's reliance upon Carter v. Haygood was also misplaced, as it is a medical malpractice case that was decided prior to the Naghi decision. 04-0646 (La.1/19/05); 892 So.2d 1261.
While the majority opinion concluded it would be unjust to find the continuous representation rule inapplicable because that would mean "a reasonable person cannot trust their attorney," Judge McClendon found the majority's reasoning flawed because in situations of fraud, where trust is misplaced, the peremptive period does not apply. La. R.S. 9:5605(E). In a footnote Judge McClendon noted:
This case is distinguished from one where the discovery of the act, omission, or neglect was hidden by the attorney such that the client did not know or had no way of knowing of the wrong, or where the attorney fraudulently lulls a client into believing a problem he has created can be fixed. The allegations of Ms. Jenkins's [sic] petition cannot be construed to allege fraud so that the peremptive periods are not applicable.
Based on the clear wording of the statute and the facts of this case, Judge McClendon found the trial court erred when it applied the continuous representation rule *619 to suspend the commencement of the one-year peremptive period. The one-year period set forth in La. R.S. 9:5605 has been designated peremptive by the legislature and is not subject to suspension. It is clear the "act, omission, or neglect" was discovered by Jenkins on January 16, 2007, and the only acts of malpractice alleged by Jenkins in her petition for damages occurred on or before April 16, 2007. As a result, Judge McClendon concluded this legal malpractice action filed on November 5, 2008, was untimely.
Starns subsequently filed a writ application with this Court, seeking supervisory review of the court of appeal's decision. Starns points out the court of appeal concluded the act of malpractice was allowing a preliminary default to be entered against Jenkins and confirmed by judgment rendered January 3, 2007. Starns also notes the court of appeal found Jenkins was served with notice of the judgment on January 16, 2007, and was put on notice attention and an inquiry was required when she received notice of the default judgment against her. Despite this conclusion, Starns asserts the court of appeal applied the continuous representation rule to suspend the commencement of the one-year peremptive period until Jenkins' suit to annul the default judgment was dismissed a second time on July 28, 2008. Starns contends being served with a default judgment in a lawsuit is sufficient to put anyone on notice that an act, omission, or neglect had occurred or at least serve as a basis that they should have discovered an act, omission, or neglect had occurred.
Starns asserts the court of appeal's decision conflicts with this Court's prior decisions in Naghi and Reeder because it refused to find the time limitations for bringing a legal malpractice action are peremptive. Starns argues the clear wording of La. R.S. 9:5605 states the peremptive period begins to run "the date of the alleged act, omission, or neglect, or. . . the date that the alleged act, omission, or neglect is discovered or should have been discovered . . ." and the periods of limitation "may not be renounced, interrupted, or suspended." See La. R.S. 9:5605(A), (B). Starns claims the court of appeal erred because this malpractice suit, filed November 5, 2008, was not filed within the one-year peremptive period under La. R.S. 9:5605 and therefore was untimely.
In her reply brief, Jenkins argues Naghi is inapplicable to this case because it did not discuss when the one-year peremptive period in La. R.S. 9:5605 commences. Pursuant to the statute, the one-year period commences on the date of the act or omission or the date the act or omission is or should have been discovered. The trial court found Jenkins, by her own testimony, did not realize things went "seriously wrong" until her checking account was garnished. The trial court found this discovery was well within one year of filing this suit. Jenkins contends the trial court made a factual finding as to when a reasonable, prudent person in her situation knew or should have known of an act or omission sufficient to give notice of the error. As this finding is based upon reasonable inferences in the record, it is not manifestly erroneous. See Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099 (La.7/5/94); 639 So.2d 216.
Jenkins further argues this Court has adopted a "continuous representation rule" in the context of legal malpractice actions, which recognizes prescription does not commence to run against the client while the attorney continues to represent the client and remedy the act of malpractice. Hendrick, 00-2054 at 1, 787 So.2d 283; Lima, 595 So.2d 624. In this case, Starns made numerous attempts to annul the default *620 judgment rendered against Jenkins. On July 28, 2008, the trial court dismissed the petition to annul and a garnishment judgment was issued against Jenkins. Jenkins subsequently filed a malpractice suit against Starns on November 5, 2008. Although unsuccessful, Jenkins asserts it is clear attempts were made to remedy the malpractice through July of 2008. Based on the continuous representation rule, Jenkins asserts the court of appeal did not err in affirming the trial court's ruling denying Starns' exception of prescription.

DISCUSSION

I. Discovery of a Malpractice Claim under La. R.S. 9:5605
Under La. R.S. 9:5605(A), an action for legal malpractice must be brought within one year of the date of the act, omission, or neglect, or within one year of the date of discovering the act, omission, or neglect and within three years of the date of the act, omission, or neglect. In this case, the court of appeal found this Court had never directly addressed how and when "discovery" of a malpractice claim under La. R.S. 9:5605 should be interpreted. Despite this statement, the court of appeal subsequently relied upon this Court's ruling in Campo, a medical malpractice case, to determine the reasonableness of the date of discovery. In Campo, this Court stated, "[prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person he or she is the victim of a tort." 01-2707 at 11-12, 828 So.2d at 510 (citing Percy v. State, E.A. Conway Memorial Hosp., 478 So.2d 570 (La.App. 2 Cir.1985)). This Court further held a prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. 01-2707 at 12, 828 So.2d at 510-11. The Court concluded such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of prescription. 01-2707 at 12, 828 So.2d at 511 (citations omitted).
The Court in Campo further explained a plaintiffs mere apprehension something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence his problem may have been caused by acts of malpractice. Id. (citing Gunter v. Plauche, 439 So.2d 437, 439 (La.1983)). Since Campo was a medical malpractice case, the Court held even if a malpractice victim is aware an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize the condition might be treatment related. Id. (citing Griffin v. Kinberger, 507 So.2d 821 (La.1987)). According to the Court, the ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. Id. (citing Griffin, 507 So.2d at 821).
In finding this Court has never addressed the issue of discovery in the context of a legal malpractice claim, the court of appeal was clearly in error. This Court directly addressed the issue in Teague v. St. Paul Fire and Marine Ins. Co., and explained the "date of discovery" from which prescription or peremption begins to run is the "date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive *621 knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." 07-1384 at 12, 974 So.2d 1266, 1275; See Bailey v. Khoury, 04-0620, p. 9 (La.1/20/05); 891 So.2d 1268, 1275 (interpreting the discovery rule as contained in the Louisiana Medical Malpractice Act). Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiff's position. Teague, 07-1384 at 13, 974 So.2d at 1275. The Court then cited the above language from Campo and held:
[b]ecause the provisions on prescription governing computation of time apply to peremption, the principles applicable in the computation of time under the discovery rule in the medical malpractice provisions, although prescriptive in nature, nevertheless should apply to the computation of time under the discovery rule of the peremptive period for legal malpractice.
Teague, 07-1384 at 14, 974 So.2d at 1276 (citing La. C.C. art. 3459). Applying Campo to a legal malpractice claim, the Court held peremption commences to run in a legal malpractice case when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. A claimant's mere apprehension something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence his problem may have been caused by acts of malpractice. The Court further held even if the client is aware an undesirable result has developed arising out of the representation, peremption will not run as long as it was reasonable for the plaintiff not to recognize the result might be due to malpractice. 07-1384 at 14, 974 So.2d at 1276.
In this case, the peremptive period began to run when the plaintiff knew or should have known of the existence of facts that would have enabled her to state a cause of action for legal malpractice. The "act, omission, or neglect" complained of in Jenkins' petition is Starns' failure to file a responsive pleading in the Medlock case and Starns' failure to appear and defend her at the April 16, 2007, hearing on the declinatory exceptions filed in response to her petition to annul judgment. Thus, the question before the Court is the date upon which Jenkins could reasonably discover the malpractice which triggered the running of the peremptive period. We find Jenkins had constructive knowledge of facts sufficient to state a cause of action against Starns when she received notice of the default judgment against her and Starns advised her a mistake had been made in January of 2007.
When Jenkins received notice of the default judgment, she was put on notice the trial court had ruled against her in the Medlock case. When presented with this information, Jenkins contacted Starns who informed her he had made a mistake and would try to fix it. Clearly, these two acts are sufficient to show Jenkins had constructive knowledge of facts that would entitle her to bring suit. This is especially true considering it was enough notice to excite attention and put her on guard to call for inquiry, which she did by contacting Starns. When Jenkins received the default judgment and made an inquiry to her attorney, she had constructive knowledge of: (1) the damage[4] in the form of an *622 $8,563.33 judgment against her; (2) the delict, or Starns' failure to file a responsive pleading; and (3) the relationship between Starns' action and the resulting default judgment, which she learned when he told her he had made a mistake. We find Jenkins' knowledge of the bad result coupled with the admission of counsel sufficient to put her on notice Starns was negligent in his representation and commenced the running of the one-year peremptive period. We need not consider the April 16, 2007, date listed in Jenkins' petition because it is clear she discovered the act of malpractice in January of 2007.

II. The Continuous Representation Rule
Although we have concluded the one-year peremptive period on Jenkins' malpractice claim commenced to run in January of 2007, the court of appeal reached a different result by applying the continuous representation rule. The court of appeal similarly concluded Jenkins was put on notice that attention and an inquiry was required when she received notice of the default judgment against her. The court of appeal further found Jenkins made an inquiry and was advised a mistake had been made and would be rectified. Despite this finding, the court of appeal concluded Jenkins' actions were reasonable and applied the continuous representation rule to suspend the commencement of the peremptive period.
Consequently, the main issue before this court is whether the continuous representation rule can apply to suspend the commencement of the one-year peremptive period under La. R.S. 9:5605. Starns contends the malpractice suit is perempted because Jenkins failed to file suit within one year of January 16, 2007, the date she was served a copy of the confirmed judgment. Starns argues this is when Jenkins discovered the act of malpractice, namely his failure to file a responsive pleading which led to the entry and confirmation of a default judgment against her. Starns asserts the time periods in La. R.S. 9:5605 are peremptive and therefore, cannot be renounced, interrupted, or suspended by the continuous representation rule. In contrast, Jenkins asserts, and the court of appeal found, the continuous representation rule suspended the commencement of the one-year peremptive period until July 28, 2008, when her suit to annul was dismissed for the second time. We agree with Starns and find this malpractice suit is untimely because the continuous representation rule cannot apply to suspend the one-year peremptive period under La. R.S. 9:5605.
Before the enactment of La. R.S. 9:5605, an action for legal malpractice was generally considered a delictual action governed by the one-year prescription of La. C.C. art. 3492. Braud v. New England Insurance Co., 576 So.2d 466 (La.1991); Rayne State Bank and Trust Co. v. National Union Fire Insurance Co., 483 *623 So.2d 987 (La.1986). To soften the occasional harshness of prescription statutes, Louisiana courts have recognized a jurisprudential exception to prescription with contra non valentem non currit praescriptio, which means prescription does not run against a person who could not bring suit. Carter v. Haygood, 04-0646 at 11, 892 So.2d 1261, 1268 (citing Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La. 1992); Plaquemines Parish Comm'n Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054 (La.1987)). The doctrine of contra non valentem is a Louisiana jurisprudential doctrine under which prescription may be suspended. Carter, 04-0646 at 11, 892 So.2d at 1268 (citing Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 222 (1996)). It is an equitable doctrine of Roman origin, with roots in both civil and common law, and is notably at odds with the public policy favoring certainty underlying the doctrine of prescription. Carter, 04-0646 at 11, 892 So.2d at 1268; See Plaquemines Parish, 502 So.2d at 1055.
This Court has recognized four instances where contra non valentem applies to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Carter, 04-0646 at 11-12, 892 So.2d at 1268. This Court has held the third application of contra non valentem encompasses what is known at common law as the "continuous representation rule." Hendrick, 00-2403 at 10, 787 So.2d at 289 (citing Lima, 595 So.2d at 630). The continuous representation rule recognizes a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which services are rendered. Hendrick, 00-2403 at 10-11, 787 So.2d at 290 (citing Cantu v. St. Paul Cos., 401 Mass. 53, 514 N.E.2d 666, 669 (1987)). The continuous representation rule also protects the integrity of the attorney-client relationship and affords an attorney an opportunity to remedy an error while, at the same time, prevents the attorney from defeating the client's claim through pleading statute of limitations. Hendrick, 00-2403 at 11, 787 So.2d at 290 (citing Wall v. Lewis, 393 N.W.2d 758, 763 (N.D.1986)).
In Plaquemines Parish, this Court found the continuous representation of the plaintiffs by the defendants in their fiduciary roles as not only public officials, but also attorneys, coupled with other factors, warranted application of the contra non valentem exception. 502 So.2d at 1059-60. In Braud, this Court recognized prescription will be suspended during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred. 576 So.2d at 468 (citations omitted). This Court also applied the continuous representation rule in Lima to suspend the commencement of the one-year prescriptive period on the plaintiffs' legal malpractice claim while the attorney continued to represent them. 595 So.2d at 629-30.
In Hendrick, the issue before this Court was again whether contra non valentem applies to suspend liberative prescription. 00-2403 at 8, 787 So.2d at 289. The Court *624 held La. R.S. 9:5605 did not apply to the plaintiff's malpractice claim because the claim had prescribed before its enactment in 1990. The Court also refused to apply the continuous representation rule to suspend prescription because the plaintiff had actual knowledge of a potential malpractice claim in December of 1988 and did not file his malpractice suit until January of 1991. 00-2403 at 14, 787 So.2d at 292. The Court explained contra non valentem does not suspend prescription when a litigant is perfectly able to bring his claim, but fails to do so. When a client does not innocently trust and rely upon his attorney, but rather actively questions his attorney's performance, the client may be denied the safe harbor of contra non valentem if equity and justice do not demand its application. 00-2403 at 16, 787 So.2d at 293.
As explained above, and as will be further discussed below, although this court has recognized the continuous representation rule, we find the malpractice suit in this instance untimely because the continuous representation rule cannot apply to suspend the one-year preemptive period found in La. R.S. 9:5605.

III. La. R.S. 9:5605
The time limits for filing a legal malpractice claim are now contained in La. R.S. 9:5605, enacted in 1990 and amended in 1992, which provides in pertinent part:
A. No action for damages against any attorney at law duly admitted to practice in this state . . . shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state. . . the prescriptive and peremptive period shall be governed exclusively by this Section.
Section B of La. R.S. 9:5605 expressly states, "The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458[5] and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended." When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. In the cases following Hendrick, this Court has specifically addressed the time periods in La. R.S. 9:5605 and repeatedly held the statute clearly provides both the one-year and three-year periods are peremptive. Naghi, 08-2527 at 5, 17 So.3d at 922; Teague, 07-1384 at 11, 974 So.2d at 1274; Reeder, 97-0239 at 5-6, 701 So.2d at 1295.
*625 In Reeder v. North, the court of appeal held while the attorney-client relationship is in existence and the attorney is actively attempting to remedy the alleged malpractice until the judgment giving rise to the malpractice claim becomes definitive, a legal malpractice claim does not ripen into a cause of action and prescription or peremption does not begin to run. 96-165, pp. 9-10 (La.App. 5 Cir. 11/14/96); 683 So.2d 912, 916. This Court disagreed, holding the three-year period is peremptive. 97-0239 at 9-10, 701 So.2d at 1296-97. The plaintiff's claim was consequently time-barred because he did not file suit within three years from the date of the negligent act, even though he did not discover the basis for his claim until after the time period had expired. 97-0239 at 8-9, 701 So.2d at 1296-97. Comparing the legal malpractice statute to the medical malpractice statute, the Court noted the legal malpractice statute was more strongly worded because La. R.S. 9:5605 expressly states the period is peremptive and, in accordance with La. C.C. art. 3461, may not be renounced, interrupted, or suspended. Id. Acknowledging the three-year peremptive period may lead to harsh results, the Court reasoned, "[t]he Legislature was aware of the pitfalls in this statute but decided, within its prerogative, to put a three-year absolute limit on a person's right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice actions at all." 97-0239 at 9, 701 So.2d at 1297.
Eleven years later in Teague, this Court reaffirmed its holding in Reeder regarding the peremptive period in La. R.S. 9:5605. 07-1384 at 11, 974 So.2d at 1274. This Court held:
[a] straightforward reading of the statute clearly shows that the statute sets forth two peremptive limits within which to bring a legal malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission, or neglect to bring such claims.
07-1384 at 11, 974 So.2d at 1274 (citing La. R.S. 9:5605; Reeder, 97-0239 at 6, 701 So.2d at 1295). The Court reasoned the three-year period is an equitable exception to the commencement of peremption, which resembles the discovery exception of contra non valentem except the statutory exception is expressly inapplicable after three years from the act, omission, or neglect. Id. The Court found the plaintiff had no evidence to connect the bad result (the settlement) with the acts of malpractice by his attorneys because the attorneys never informed him of their failure to post a jury bond and knowingly withheld that information from him. 07-1384 at 17, 974 So.2d at 1277-78. The malpractice suit was therefore timely because it was filed within one year of discovering the acts of malpractice and within three years of the act of malpractice.
This Court again reaffirmed its holding in Reeder in Naghi v. Brener. The issue before the court in Naghi was whether an amended petition can relate back to the time of filing the original petition under La. C.C.P. art. 1153 when the time period for filing suit is peremptive rather than prescriptive. 08-2527 at 8, 17 So.3d at 924. In discussing La. R.S. 9:5605, the Court again found the statute clearly provides the one-year and three-year time periods are peremptive, which is why the plaintiff's claim in Reeder was untimely even though he did not discover the basis for his malpractice claim until after the three-year period had expired. 08-2527 at 5, 17 So.3d at 922. Realizing the unfairness that may result from Reeder, the Court reiterated its prior statement regarding how the statutory period for filing suit is strictly a legislative prerogative, *626 just as it is within the legislative prerogative not to allow a legal malpractice action at all. Id. (citing Reeder, 97-0239 at 9, 701 So.2d at 1297).
While recognizing the facts in Reeder concerned the three-year period in La. R.S. 9:5605 and resulted in the Court finding it was a peremptive period, this Court held, "for the same reasons we stated in Reeder, the one-year period is also peremptive." Id., 08-2527 at 5-6, 17 So.3d at 922 (citing La. R.S. 9:5605(B); Teague, 07-1384 at 11-12, 974 So.2d 1266, 1274 ("[a] straightforward reading of the statute clearly shows that the statute sets forth two peremptive limits within which to bring a legal malpractice action, namely one year from the date of the alleged act or one year from the date of discovery within a three-year limitation from the date of the alleged act, omission, or neglect to bring such claims")). While discussing the differences between prescription and peremption, the Court partially relied on the above quoted language from Hebert, 486 So.2d at 723. The Court subsequently found the relation back of a pleading avoids the operation of the peremptive time period by allowing a pleading filed after the expiration of the period to relate back to the filing of an original and timely filed petition. Naghi, 08-2527 at 10, 17 So.3d at 925. Since nothing may interfere with the running of a peremptive period, the Court held an amended and supplemental petition adding a plaintiff cannot relate back to the original petition. 08-2527 at 11, 17 So.3d at 926.
Reaffirming this Court's decision in Reeder, Teague, and Naghi, we find La. R.S. 9:5605 clearly provides three peremptive periods: (1) a one-year peremptive period from the date of the act, neglect, or omission; (2) a one-year peremptive period from the date of discovering the act, neglect, or omission; (3) and a three-year peremptive period from the date of the act, neglect, or omission when the malpractice is discovered after the date of the act, neglect, or omission. We further find the continuous representation rule cannot apply to suspend the commencement of these peremptive periods, as it would render La. R.S. 9:5605(B) meaningless. We further find Reeder to be directly on point regarding the application of the continuous representation rule to the peremptive period in La. R.S. 9:5605.
The facts in Reeder mirror those in the instant case. The plaintiff in Reeder claimed his attorney failed to raise all of the claims arising out of the same transaction or occurrence in the original federal complaint, which barred his subsequent state law claims under res judicata. The trial court granted the defendant's exception of peremption under La. R.S. 9:5605, but the court of appeal reversed finding the commencement of the peremptive period was suspended under the continuous representation rule. This Court held the court of appeal erred in applying the continuous representation rule to suspend the three-year peremptive period under La. R.S. 9:5605. 97-0239 at 10, 701 So.2d at 1297.
This Court found the court of appeal's reliance on Lima misplaced because Lima applied the one-year prescriptive period of La. C.C. art. 3492, since both the negligent act and the filing of the malpractice suit occurred prior to the enactment of La. R.S. 9:5605. In Lima, this Court held the prescriptive period was suspended "during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred." Reeder, 97-0239 at 11, 701 So.2d at 1297 (citing Lima, 595 So.2d at 624, 630 (La. 1992) (internal citation omitted)). This Court further explained in Lima the continuous representation *627 rule is a "suspension principle . . . based on the third application of contra non valentem, which suspends prescription when the debtor has done some act effectually to prevent the creditor from availing himself of the cause of action." Reeder, 97-0239 at 11, 701 So.2d at 1297-98 (citing Lima, 595 So.2d at 630 (cites omitted)). This Court applied the continuous representation rule in Lima because article 3492 provides a prescriptive period rather than a peremptive period. 97-0239 at 11, 701 So.2d at 1297.
As a suspension principle based on contra non valentem, the Court in Reeder held the continuous representation rule cannot apply to peremptive periods. The Court found this clear from the wording of La. R.S. 9:5605, which states the one-year and three-year periods are peremptive and may not be renounced, interrupted, or suspended, and article 3461, which states peremption may not be renounced, interrupted, or suspended. 97-0239 at 12, 701 So.2d at 1298. This Court then discussed the distinction between prescription and peremption, noting:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ.Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.

Id., 97-0239 at 12-13, 701 So.2d at 1298 (citing Hebert, 486 So.2d at 723) (emphasis added). The Court in Reeder consequently found the malpractice claim untimely filed under the three-year peremptive period of La. R.S. 9:5605.
The same reasoning applies here. The statute clearly states the one-year and three-year periods therein are peremptive and consequently cannot be renounced, interrupted, or suspended. La. R.S. 9:5605(B). In the present case, Jenkins had constructive knowledge and therefore, "discovered" Starns' acts of malpractice in January of 2007. Jenkins filed her malpractice suit in November of 2008, within three years of the acts of malpractice but more than one year after discovery. The lower courts, relying principally upon Lima and Hendrick, found her claim timely by applying the continuous representation rule to suspend commencement of the peremptive period. Just as the Court in Reeder found the court of appeal's reliance upon Lima misplaced, we also find the lower courts in this case erred in relying upon Lima to apply the continuous representation rule. Neither Hendrick nor Lima involved the application of La. R.S. 9:5605 to a legal malpractice claim. Instead, both cases applied the one year prescriptive period under La. C.C. art. 3492, which can be suspended or interrupted. As discussed at length above, in Reeder this Court held the continuous representation rule is a suspension principle based on contra non valentem and therefore cannot apply to peremptive periods. 97-0239 at 12, 701 So.2d at 1298. This Court also stated, "nothing may interfere with the running of a peremptive period. . . . *628 And exceptions such as contra non valentem are not applicable. . . . prescription. . . may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period. . . ." 97-0239 at 12-13, 701 So.2d at 1298 (citing Hebert v. Doctors Memorial Hosp., 486 So.2d 717, 723 (La.1986)). Applying Reeder to this case, it is clear the trial court and court of appeal erred in applying the continuous representation rule to suspend the commencement of the peremptive period on Jenkins' malpractice suit.
Our holding in Naghi similarly supports this conclusion, although Naghi involved the relation back of an amended and supplemental pleading. Although we did not discuss the continuous representation rule in Naghi, in reference to the one-year period from the discovery of the act of malpractice we held, "[t]he latter period clearly carves out an equitable exception to the commencement of peremption that resembles the discovery exception of our jurisprudential doctrine of contra non valentem with an additional qualification that the statutory discovery exception is expressly made inapplicable after three years from the act, omission, or neglect." 07-1384 at 11, 974 So.2d at 1274. The Court went on to state "[g]iven the resemblance between the statutory discovery rule and our jurisprudential one, it logically follows that we interpret the statutory rule in accordance with the jurisprudential one, but within the statutory limitations." 07-1384 at 12, 974 So.2d at 1275. By comparing the three-year period in La. R.S. 9:5605 to the doctrine of contra non valentem, but limiting the similarity to the statutory framework of La. R.S. 9:5605, this Court effectively distinguished the two and placed greater restrictions on the application of the three-year period. Since the statutory limitations in La. R.S. 9:5605 state the time periods therein are peremptive and cannot be renounced, interrupted, or suspended, this restriction supports our concluding the continuous representation rule cannot apply as an exception to the commencement of the peremptive periods.

CONCLUSION
The trial court and court of appeal erred in applying the continuous representation rule, an application of contra non valentem, to suspend the commencement of the one-year peremptive period set forth in La. R.S. 9:5605 until the attorney's continuing efforts to remedy his negligence had concluded. Both the statute and jurisprudence from this Court clearly state the time periods in La. R.S. 9:5605 are peremptive. Unlike prescriptive periods, peremptive periods cannot be renounced, interrupted, or suspended. In Reeder, this Court specifically held the continuous representation rule does not apply to suspend commencement of the three-year peremptive period in La. R.S. 9:5605. For the same reasons set forth in Reeder, we now conclude the continuous representation rule also does not apply to the one-year peremptive period in La. R.S. 9:5605. We therefore reverse the judgment of the court of appeal and hold Jenkins' legal malpractice suit is untimely.
REVERSED. DISMISSED.
JOHNSON, Justice, dissents and assigns reasons.
CLARK, Justice, dissents for reasons assigned by Justice JOHNSON.
JOHNSON, Justice, dissents and assigns reasons.
I respectfully dissent from the majority's finding that the continuous representation rule does not apply in this case.
In my mind, the continuous representation rule should be applied similarly to the *629 "continuous treatment" rule in medical malpractice cases. The continuous treatment rule provides that prescription in a medical malpractice case is suspended as long as the defendant health care provider continuously treats the plaintiff in an effort to improve the plaintiff's condition allegedly caused by negligent treatment. See Carter v. Haygood, 04-0646 (La.1/19/05), 892 So.2d 1261. This Court has found the time periods in the medical malpractice act to be prescriptive, rather than peremptive. However, failure to apply the continuous representation rule in legal malpractice cases leads to absurd results.
As I stated in my dissent in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, "if a client is required to file suit against his attorney while the suit is being litigated and before a judgment is definitive, the client is placed in the untenable position of asserting that a judgment is both valid and invalid." Reeder, 701 So.2d at 1300. The failure to apply the continuous representation rule leads to absurd results because an "attorney need only litigate a claim past the three (3) year preemptive period to avoid all consequences of his malpractice." Id.
In my mind, the earliest this cause of action ripened into a legal malpractice claim was on July 28, 2008, when the trial court dismissed the Petition to Annul. Until that time, Mr. Starns continued his representation of Ms. Jenkins, and was still attempting to remedy the negative results caused by the entry of a default judgment against his client.
CLARK, Justice, dissenting for reasons assigned by Justice JOHNSON.
I dissent from the majority opinion for the reasons assigned by Justice Johnson.
NOTES
[1] During cross-examination, Jenkins subsequently testified she "knew about a problem back in January of 2007" when she received a copy of the judgment.
[2] Contrary to well-established jurisprudence from this Court, which is discussed later in this opinion, the trial court erroneously refers to the one-year time limit under La. R.S. 9:5605 as a prescriptive period.
[3] Like the trial court, the majority opinion of the court of appeal erroneously refers to the one-year time limit in La. R.S. 9:5605 as a prescriptive period.
[4] In Braud, this Court clarified:

Until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.
576 So.2d at 468 (citing Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La. 1986)). Although money was not garnished from Jenkins' bank account until October of 2008, the judgment put Jenkins on notice she would be responsible for paying Medlock $8,563.33 if Starns was unsuccessful in having the judgment set aside. Thus, Jenkins suffered damages when she received notice of the money judgment and learned the trial court had ruled in Medlock's favor.
[5] Article 3458 provides: Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.