TERRI F. LOVE, Judge.
|,The relator filed suit against his former attorney for allegedly committing malpractice by advising him to agree to a plea agreement in a federal criminal case. The trial court first held that the attorney’s actions committed on or after being admitted pro hac vice were perempted pursuant to La. R.S. 9:5605, and allowed the relator to amend his petition. Subsequently, the trial court conducted a hearing on the attorney’s exceptions of peremption, no cause of action, and motion for summary judgment, which the trial court denied. Relator now seeks supervisory review of the trial court’s denials. We find that peremption does not apply to acts committed by an out-of-state attorney prior to his admission pro hac vice. Alleged acts of negligence prior to pro hac vice admission are subject to a prescriptive period of one year. Under the facts and circumstances of this case, the doctrine of continuous representation does not apply. Thus, Mr. Titus’ claims were prescribed. The writ is granted.[1]

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mark J. Titus retained Paul H. Villalo-bos, a Louisiana lawyer, to represent him in conjunction with a federal criminal investigation. James Ardoin III, and I2ARDOINLAW, PLLC., from Texas, (“Ardoin defendants”) were later hired for Mr. Ardoin’s knowledge and experience in the field of federal criminal law. In June 2011, Mr. Ardoin began advising Mr. Titus regarding his impending charges. On June 20, 2011, Mr. Titus signed a written plea agreement. Following, on June 29, 2011, he was charged with eighteen counts of mail fraud by bill of information, which included the information that the government would recover $1,200,320.00 from him as the proceeds of his fraud. The bill of information included a provision that if the proceeds of Mr. Titus’ fraud were unavailable, then the government would recover the money from his personal property.
On August 22, 2011, Mr. Ardoin was granted pro hac vice admission for this matter. Subsequently, on February 15, 2012, the United States Attorney’s office filed a Motion for Preliminary Order of Forfeiture against Mr. Titus. The motion claimed that Mr. Titus violated his plea agreement by “engaging in continued criminal activity” by making structured transactions to conceal money from the government. On June 3, 2012, Mr. Titus e-mailed Mr. Ardoin to express his displeasure about the government seeking forfeiture of his property.
On August 5, 2013, Mr. Titus filed suit against Tim Wilson, Sr.; Tim D. Wilson Investigations, Incorporated; Mr. Villalo-bos; and the Ardoin defendants alleging malpractice and negligence. Mr. Titus contended that the reason he entered into the plea agreement was because the defendants assured him that an oral “side deal” was reached wherein the government agreed not to seek the forfeiture of his personal property to satisfy the $1,200,320.00 judgment.
The Ardoin defendants, as well as Mr. Villalobos, filed peremptory exceptions of peremption contending “that Titus had notice that his property was going to be forfeited when he signed the guilty plea of June 20, 2011 that expressly ^acknowledged the forfeiture.” The trial court held that Mr. Titus had notice no later than June 3, 2012, that the government was seeking forfeiture of his personal property. Accordingly, pursuant to La. *931 R.S. 9:5605, Mr. Titus’ legal malpractice claims regarding acts committed after Mr. Ardoin was admitted pro hac vice were perempted, since they were filed over a year after June 3, 2012. The trial court granted Mr. Titus thirty days to amend his petition to state a claim against Mr. Ardoin for acts occurring prior to his admission pro hac vice. Mr. Titus’ amendment to his petition restated his legal malpractice claims, but asserted Mr. Ardoin’s negligence. Accordingly, the Ardoin defendants filed another peremptory exception of peremption, an exception of no cause of action, and a Motion for Summary Judgment. The trial court overruled the exception of peremption/prescription, overruled the exception of no cause of action, and denied the Motion for Summary Judgment.
The Ardoin defendants noticed then.’ intent to seek a writ of supervisory review and timely filed this application. They contend that the trial court erred by denying relief because Mr. Titus’ claims regarding Mr. Ardoin’s alleged acts of negligence were perempted and prescribed prior to the filing of the petition on August 5, 2013.

STANDARD OF REVIEW

Appellate courts review legal questions, like the denial of peremptory exceptions, de novo. Robert v. Robert Mgmt. Co., LLC, 11-0406, p. 3 (La.App. 4 Cir. 12/7/11), 82 So.3d 396, 398. “Appellate courts review peremptory exceptions by reviewing the entire record to ‘determine whether the trial court was manifest ly erroneous with its factual conclusions.’ ” Metairie III v. Poche’ Const., Inc., 10-0353, p. 4 (La.App. 4 Cir. 9/29/10), 49 So.3d 446, 449, quoting Patriot American Hospitality Partnership, LP v. Mississippi Land Holdings, Inc., 06-0601, p. 3 (La. App. 4 Cir. 12/13/06), 948 So.2d 249, 251.

PEREMPTION

The Ardoin defendants seek supervisory review of the trial court’s denial of their peremptory exception of peremption/pre-scription because Mr. Ardoin was “authorized” to practice law prior to being admitted pro hac vice. Therefore, they contend that peremption applies, as outlined in La. R.S. 9:5605.
“Peremption is a period of time fixed by law for the existence of a right.” Rando v. Anco Insulations Inc., 08-1163, p. 19 (La.5/22/09), 16 So.3d 1065, 1082. “The right is extinguished upon the expiration of the peremptive period.” Id. “When the peremptive period has run, the cause of action itself is extinguished unless timely exercised.” Id. “Peremption may not be renounced, interrupted, or suspended.” La. C.C. art. 3461. “When an exception of prescription is filed, ordinarily, the burden of proof is on the party pleading prescription or peremption.” Metairie III, 10-0353, p. 4, 49 So.3d at 449. “However, when prescription or peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not been perempted.” Id.
The Ardoin defendants assert that all of Mr. Ardoin’s actions were encompassed by La. R.S. 9:5605 because he was “authorized” to practice law in Louisiana. We find this argument lacks merit. La. R.S. 9:5605(A) provides that an action for legal malpractice shall be filed within “one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.” The trial court held that “the one-year peremptive period provided by La. R.S. 9:5605 does not apply to an out-of-state attorney’s representation of a client prior to his pro hac \ ¡(vice admission.” We agree. The statute provides *932 that the peremptive period applies to “any attorney at law duly admitted to practice in this state.” La. R.S. 9:5605(A). Mr. Ardoin was not “duly admitted” prior to the trial court granting his motion for pro hac vice status. La. R.S. 9:5605 also states that the peremptive period applies to claims regarding acts of alleged legal malpractice of “any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination” that “are authorized by the laws of this state to engage in the practice of law.” La. R.S. 9:5605. Thus, we find that the adjective “authorized” modifies the commercial businesses.
This Court also finds the matter of Brennan’s, Inc. v. Edward Colbert, et al., instructive. In Brennan’s, the trial court found that the peremptive period of La. R.S. 9:5605 only applies to attorney’s “duly admitted” in Louisiana. The trial court further held that an out-of-state attorney was not “duly admitted” in Louisiana until pro hac vice admission was granted. On supervisory review, this Court denied writs. Brennan’s, Inc. v. Edward Tuck Colbert, et al., 08-2573 (La.1/9/09), 998 So.2d 721. Subsequently, the Louisiana Supreme Court unanimously denied writs. Brennan’s, Inc. v. Edward Tuck Colbert, et al., unpub., 2008-2573 (La.01/09/09). Accordingly, we find no error in the trial court’s finding, as Mr. Ardoin was not yet admitted pro hac vice in Louisiana, and was therefore, not “duly admitted.”

PRESCRIPTION

Although we find that the peremptive period provided by La. R.S, 9:5605 does not apply to any acts committed by the Ardoin defendants prior to Mr. Ardoin being admitted pro hac vice, we now address whether Mr. Titus’ claims are prescribed.
Lin conjunction with the de novo review of legal questions, “[i]f evidence is introduced at the hearing on the peremptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-dearly wrong standard of review.” Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. “If the findings, are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. “Delictual actions are subject to a liberative prescription of one year.” La. C.C, art. 3492. “This prescription commences to run from the day injury or damage is sustained.” La. C.C. art. 3492.
The trial court previously found that Mr. Titus had notice no later than June 3, 2012, the date of the e-mail to Mr. Ardoin, that his property was going to be forfeited. Mr. Titus filed suit on August 5, 2013. Thus, since more than a year passed between these dates, we must determine if the trial court erred by overruling the Ardoin defendants’ exception based on its finding that the continuous representation rule suspended the running of prescription while Mr. Ardoin represented Mr. Titus.

CONTINUOUS REPRESENTATION

Continuous representation is “a suspension principle based on contra non valentem,” and “cannot apply to peremp-tive periods.” Reeder v. N., 97-0239, p. 12 (La.10/21/97), 701 So.2d 1291, 1298. However, the principle may apply to prescriptive periods. Reeder, 97-0239, p. 11, 701 So.2d at 1297. “The continuous representation rule essentially provides [that] prescription of an act of legal malpractice does not begin to run while the attorney continues to represent the client and attempts to remedy the act of malpractice.” Jenkins v. Starns, 11-1170, p. 6 (La.1/24/12), 85 So.3d 612, 615. See also *933 Perez v. Shook, 97-0420, p. 17 (La.App. 4 Cir. 12/3/97), 703 So.2d 821, 830. “The rule protects the integrity of the attorney-client relationship, allowing the client to rely upon the attorney’s professional ability and good faith while affording the attorney an opportunity to remedy his error.” Jenkins, 11-1170, p. 6, 85 So.3d at 615. “When a client does not innocently trust and rely upon his attorney, but rather actively questions his attorney’s performance, the client may be denied the safe harbor of contra non valentem if equity and justice do not demand its application.” Jenkins, 11-1170, p. 20, 85 So.3d at 624, quoting Hendrick v. ABC Ins. Co., 00-2403, p. 16 (La.5/15/01), 787 So.2d 283, 293 (superseded by statute). “[T]he continuous representation doctrine is applicable where the professional’s involvement after the alleged malpractice is for the same or related services and not merely continuity of a general professional relationship.” Perez, 97-0420, p. 17, 703 So.2d at 830. Louisiana courts have also ruled that the continuous representation doctrine does not apply when “there was evidence to show that the clients knew or should have known of the attorney’s initial act of malpractice, yet continued to allow the attorney to represent them, which resulted in failed attempts to remedy the initial negligent act or omission.” Vegelos v. Abramson, 12-1235, pp. 13-14 (La.App. 4 Cir. 10/2/13), 126 So.3d 639, 647.
Because prescription was evident on the face of the pleadings, Mr. Titus bore the burden of proving that he was entitled to the application of the continuous representation doctrine to prevent the dismissal of his claims due to prescription. Mr. Titus alleged that Mr. Ardoin assured him that a “secret” deal existed with the | ^government to ensure that his property would not be forfeited.[2] Further, Mr. Titus contends that Mr. Ardoin advised him to lie under oath to a federal district court judge to hide the fact that a “secret” deal existed.[3] Contrary to the alleged “secret” deal, the government sought the forfeiture of Mr. Titus’ property. On June 3, 2012, Mr. Titus acknowledged his dissatisfaction that the government was seeking the forfeiture of his property. The attorney-client relationship between Mr. Ardoin and Mr. Titus did not end until November 2013,[4] which was after Mr. Titus filed suit. Therefore, Mr. Titus continued on in some capacity with Mr. Ardoin for almost a year and a half after he had knowledge that the government was seeking forfeiture of his property.
The record contains no evidence that Mr. Ardoin continued to represent Mr. Titus in order to remedy the alleged malpractice of assurances that Mr. Titus’ “properties would not be subject to forfeiture,” and the allegation that Mr. Ardoin did not “advise Mr. Titus regarding the nonforfeiture agreement.” Under the facts and circumstances of this case, we do not find that the safe harbor of continuous representation applies. Mr. Titus knowingly lied under oath, and agreed to a plea deal that included language regarding the possibility that his property would be forfeited. Again, the trial court previously held that Mr. Titus became aware of the *934 alleged malpractice no later than June 3, 2012.[5] The principles underpinning contra non valentum, like equity, justice, and fairness, are lacking in the present |9case. See Hendrick, 00-2403, p. 16, 787 So.2d at 293. “Therefore, we decline to mechanically apply the continuous representation rule as' encompassed by contra non valen-ten in a vacuum to suspend prescription in this particular case.” Id. Accordingly, as Mr. Titus’ petition was filed more than a year after June 3, 2012, we find that Mr. Titus failed to meet his burden to show that the continuous representation doctrine should apply. Therefore, the writ is granted.

NO CAUSE OF ACTION/MOTION FOR SUMMARY JUDGMENT

Because we find that Mr. Titus’ claims are prescribed, the discussions of the exception of no cause of action and motion for summary judgment are pretermitted.

DECREE

For the above-mentioned reasons, we find that the trial court erred by denying the Ardoin defendants’ exception of prescription because all of Mr. Titus’ claims had prescribed, and reverse. Accordingly, the writ is granted.
WRIT GRANTED

. In accordance with Rules 2-11.8 and 4-7 of the Uniform Rules, Courts of Appeal, this Court ordered the matter set for oral argument and briefing.

. Mr. Titus' plea agreement included language that his property would be seized to satisfy the judgment if all of the proceeds of his fraud were not available.

. Mr. Titus was questioned by the federal district court judge regarding any extra deals outside of his plea agreement.

. Counsel for Mr. Titus provided this date during the hearing on the exceptions and motion for summary judgment.

. The trial court judge who granted Mr. Titus leave to amend his petition ruled that Mr. Titus had knowledge of the alleged malpractice no later than June 3, 2012. That judgment is not being reviewed.