GUIDRY, J.
I Jn this legal malpractice action, plaintiff, Satterfield & Pontikes Construction, Inc. (S & P), appeals from a trial court judgment sustaining a peremptory exception raising the objection of peremption filed by defendants, Breazeale Sachse & Wilson (BSW), Murphy J. Foster III, and Steven B. Loeb, and dismissing S & P’s claims against them with prejudice. For the reasons that follow, we affirm.
*556 FACTS AND PROCEDURAL HISTORY
S & P was a general contractor for construction of the Lawrence D. Crocker Elementary School in New Orleans (Crocker project). The State of Louisiana, Department of Education, Recovery School District (RSD) was the property owner and Jacobs Project Management Company/CSRS Consortium (Jacobs) was the project manager. Norman Chenevert and Chenevert Architects, LLC (collectively “Chenevert”) as well as sub-consultant structural engineers, Julien Engineering & Consulting, Inc. (Julien), created the plans and specifications for the Crocker project.
In August 2011, S & P met with Murphy J. Foster, III, a partner at BSW, and retained BSW to represent it in matters arising out of another project for which S & P also served as general contractor involving St. Mary’s Academy in New Orleans (St. Mary’s project). Thereafter, on August 12, 2011, Foster sent a letter to S & P, requesting a waiver of a potential conflict related to BSW’s representation of S & P on the St. Mary’s project. In this letter, Foster explained that one of his partners, Steven Loeb, had been representing Chenevert for many years and had been assisting Chenevert on matters concerning the Crocker project. Foster further advised S & P that because it was the contractor on the Crocker project, a conflict of interest may exist or arise. Therefore, Foster stated that while there may be no formal claims or litigation between S & P and Chenevert, professional rules ^applicable to lawyers required that BSW make disclosure and obtain written waivers from both clients. Laura Pontikes, the Chief Financial Officer for S & P, signed the waiver on behalf of S & P as requested on August 17, 2011. However, BSW and Loeb subsequently returned Chenevert’s file in the Crocker project per Chenevert’s request on November 1,2011.
On February 17, 2012, counsel for RSD sent a notice of consideration of contractor default to S & P, asserting S & P had repeatedly failed to proceed with changes in work as ordered on the Crocker project, failed to diligently perform work on the project and to take necessary action to bring work on schedule, failed to provide the architect with timely submittals, and failed to meet deadlines in its own submit-tal schedule, causing significant delays in the performance of the work. Thereafter, Denis Ducran, general counsel for S & P, and Laura Pontikes contacted Foster and asked for his assistance on the Crocker project.
On February 24, 2012, Foster sent a letter on behalf of S & P to counsel for RSD, responding to the claims raised by RSD in its notice of consideration of default. Thereafter, on March 6, 2012, Foster attended a settlement conference related to RSD’s claims raised in its notice of default. During this meeting, RSD and S & P reached a settlement.
On the day of the settlement conference, Foster sent a letter to Laura Pontikes, as representative of S & P, to confirm then-previous conversations regarding BSW’s representation of S & P in connection with the Crocker project and to advise of its concern regarding S & P’s dispute with Chenevert’s sub-consultant, Julien. Particularly, Foster reiterated that Loeb and BSW had represented Chenevert on the Crocker project for many years and advised that inasmuch as the sub-consultant worked for the architect, there were actually three parties that S & P could sue for damages suffered as a result of the delay and additional costs: RSD; the sub-consultant, Julien; and the architect, Chene-vert. |4Foster further- advised that S & P had a direct action in Louisiana against either or both the architect and the struc *557 tural steel designer and had a contractual action for the same damages against RSD. Foster reiterated that BSW could not represent S & P if it chose to sue Chenevert. Foster stated that Chenevert believed that the structural steel design drawings were in error, and Foster stated that pretty much everyone feels the same way. Foster reiterated that it could defend S & P against the owner, RSD, and could sue the owner and the structural steel designer, but that it could not and would not sue Chenevert. However, Foster stated that S <& P had a viable cause of action against Chenevert that could be pursued, although it was likely that Chenevert would third-party his sub-consultant, which would ultimately be responsible for any judgment rendered. Foster stated that if BSW continued to represent S & P, it would proceed directly against the sub-consultant and not sue Chenevert. Foster concluded by asking S & P to sign a waiver if it would like BSW to represent it in pursing any claims and defenses on the Crocker project, acknowledging its waiver of any rights against Chenevert. Laura Pontikes acknowledged receiving Foster’s letter on March 7, 2012.
Although acknowledging receipt of the March 6, 2012 letter from Foster, Laura Pontikes never executed the waiver nor took any further action with regard to its contents. On March 28, 2012, RSD sent S & P a settlement letter agreement memorializing the agreement reached regarding RSD’s claims. Ducran reviewed and revised the agreement prior to its execution by S & P, and after its execution, Laura Pontikes thanked Foster for the “victory.”
Thereafter, in April 2012, BSW filed suit on behalf of S & P against Julien and its insurer and filed suit in February 2013 against RSD. Issues with RSD and Julien continued through 2012 and 2013, and in July/August 2013, S & P decided to also file suit against Chenevert. However, due to the aforementioned conflict, Foster recommended a new law firm to represent S & P in connection with the | ¡¡Crocker project, Shields Mott Lund, LLP (SML). On August 22, 2013, Ducran sent an email to Foster stating that S & P had retained SML to represent it in its lawsuits against RSD and Julien and requested that BSW’s entire file be sent to Sonny Shields at SML.
Thereafter, on July 31, 2014, S & P filed a petition for damages against BSW, Foster, and Loeb asserting claims of legal malpractice. In its petition, S & P asserted that when documents from BSW’s litigation file were sent to SML in February 2014, SML also received a copy of an October 3, 2011 email from John Haarala, senior project manager at Jacobs, to Norman Chenevert. In the email, Haarala stated that he had received the associated pricing for the miscellaneous steel scope of work and that was what he had been worried about from the start. Haarala told Chenevert that this information was to be included in an Errors & Omissions claim. Haarala stated that he had asked from the start for an order of magnitude from Chenevert, and he had yet to receive any response to those requests. Haarala reiterated that the entire evaluation was the responsibility of Chenevert. Chenevert forwarded the email to his associate, Mark Baum, and carbon copied Loeb.
S & P alleged in its petition that not until the discovery of the October 3, 2011 email did S & P discover that its own attorneys had withheld evidence and information from S & P, i.e., that Chenevert, RSD, and Jacobs all knew that the steel design plans were inadequate and incomplete and were the source of the delays and problems with the Crocker project. S & P alleged that had BSW informed it of this information, specifically the October 3, *558 2011 email, S & P would not have accepted the settlement terms with RSD,
In response, BSW, Foster, and Loeb filed a peremptory exception raising the objection of peremption on September 5, 2014. They asserted that the information S & P asserts BSW did not disclose to it, which formed the basis of its claim against |nBSW, Foster, and Loeb, was in fact expressly provided by BSW to S & P in the March 6, 2012 letter. Therefore, because S & P did not file its action against BSW, Foster, and Loeb until July 31, 2014, it was filed more than one year after S & P discovered or should have discovered the facts giving rise to its legal malpractice claim against them and as such is per-empted pursuant to the one-year peremp-tive period established by La. R.S. 9:5605.
The trial court held a hearing on defendants’ exception on December 1, 2014. Pursuant to a stipulation between the parties, the matter was submitted on briefs as well as attached exhibits and memoranda, which were offered and filed into evidence. On December 18, 2014, the trial court issued written reasons for judgment, finding that S & P should have known at the latest on March 7, 2012, the facts giving rise to any potential malpractice claim against BSW, Foster, and Loeb, and that those facts included, but are not limited to, the existence of a potential conflict between Chenevert and S & P in connection with the Crocker project and the ramifications thereof. Therefore, the trial court found that in accordance with La. R.S. 9:5605, which establishes a one-year peremptive period for legal malpractice claims, any claims of legal malpractice that S & P had against BSW, Foster, and Loeb are per-empted, as S & P’s suit was not filed until July 31, 2014, more than one year after S & P should have known or knew of the facts giving rise to any of the claims at issue.
Thereafter, the trial court signed a judgment in conformity with its ruling and dismissed all of S & P’s claims against BSW, Foster and Loeb, with prejudice. S & P filed a motion for new trial, which was denied. S & P now appeals from the trial court’s judgment.
STANDARD OF REVIEW
The objection of peremption is raised by the peremptory exception. La. C.C.P. art. 927(A)(2). Ordinarily, the ex-ceptor bears the burden of proof at the [ytrial of the peremptory exception. However, if peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not per-empted. See Lomont v. Bennett, 14-2483, p. 7 (La. 6/30/15), 172 So.3d 620, 626-627, cert. denied, — U.S. -, 136 S.Ct. 1167, 194 L.Ed.2d 178 (2016).
At a hearing on a peremptory exception of peremption pleaded prior to trial, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931. If evidence is introduced at the hearing, the district court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review. Lomont, 14-2483 at p. 8,172 So.3d at 627. Accordingly, if those findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Lomont, 14-2483 at p. 8,172 So. 2d at 627.
DISCUSSION
The time limit for filing a legal malpractice claim is set forth in La. R.S, 9:5605(A), which provides that an action for legal malpractice must be brought within one year of the date of the act, omission, or neglect, or within one year of the date of discovering the act, omission, or neglect *559 and within three years of the date of the act, omission, or neglect. Jenkins v. Starns, 11-1170, p. 13 (La. 1/24/12), 85 So.3d 612, 620. Louisiana Revised Statutes 9:5605(B) farther provides that both the one-year and three-year periods of limitation provided in Subsection A are peremptive periods within the meaning of La. C.C. art. 3458 and as such, they cannot be renounced, interrupted, or suspended.
The “date of discovery” from which peremption begins to run is the date on which a reasonable person in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person that he or she is the victim of a tort and to state a cause of action against the defendant. Teague v. St. Paul Fire and Marine Insurance Co., 07-1384, p. 13 (La. 2/1/08), 974 So.2d 1266, 1275. Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiff s position. Teague, 07-1384 at p. 13, 974 So.2d at 1275.
The Louisiana Supreme Court has consistently held that peremption commences to run in legal malpractice cases when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. Jenkins, 11-1170 at p. 15, 85 So.3d at 621; Teague, 07-1384 at p. 14, 974 So.2d at 1276. Furthermore, the supreme court has held that a claimant’s mere apprehension that something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Teague, 07-1384 at p. 14, 974 So,2d at 1276.
The standard imposed is that of a reasonable person. Any plaintiff who had knowledge of facts that would place a reasonable person on notice that malpractice may have been committed shall be held to have been subject to the commencement of peremption by- virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. Straub v. Richardson, 11-1689, p. 7 (La.App. 1 Cir. 5/2/12), 92 So.3d 548, 552, writ denied, 12-1212 (La. 9/21/12), 98 So.3d 341, cert. denied, - U.S. -, 133 S.Ct. 1805, 185 L.Ed. 2d 811 (2013). The focus is on the appropriateness of the claimant’s actions or inactions, and therefore, the inquiry becomes when would a reasonable person have been on notice that malpractice may have been committed. Straub, 11-1689 at p. 7, 92 So.3d at 553.
In the instant case, S & P alleged in its petition, and in opposition to defendants’ exception raising the objection of peremption, that the act of legal malpractice was defendants’ failure to disclose the October 3, 2011 email to S & P, |flresulting in the defendants’ failure to render a full and fair disclosure to S & P of all facts which materially affected its rights and interests in the dispute with RSD.[1] Partic *560 ularly, S & P asserted in its petition that defendants failed to provide S & P with information as to Chenevert and/or Ju-lien’s liability for the inadequate steel designs, that Jacobs and RSD had acknowledged the inadequacy of the steel designs, and that the inadequacy of the steel designs was the source of the delay on the Crocker project. As such, S & P alleged that defendants were negligent in: failing to make a full and fair disclosure to S & P that Chenevert admitted that the steel design plans and specifications were drafted and approved in derogation of professional standards of care; failing to make full and fan* disclosure to S & P that Chenevert held Julien responsible for the steel design errors; failing to make full and fair disclosure to S & P of their knowledge that RSD and Jacobs believed the design team was responsible for the steel design errors; failing to make a full and fair disclosure to 5 & P that RSD, Jacobs and Chenevert had concealed and were concealing material facts to gain an unjust advantage over S 6 P in the Errors and Omissions (E & 0) steel claims negotiation; failing to make a full and fair disclosure to S & P as to the true nature and scope of the adversity and conflict of interest between Chenevert and S & P; and failing to render ‘full, frank, and complete advice to S & P prior to negotiating with RSD.
Therefore, based on the allegations made by S & P in its petition, the act, omission, or neglect complained of is defendants’ failure to disclose all facts which materially affected its rights and interests in the disputes with RSD and which were contained in the October 3, 2011 email. In sustaining defendants’ exception |10raising the objection of peremption, the trial court found that S & P “should have known at the latest on March 7, 2012[,] the facts giving rise to any potential malpractice claims against BSW. Those facts include but are not limited to: the existence of a potential .conflict between Chenevert and [S & P] in connection with the Crocker [pjroject and the ramifications thereof. This is evidenced by an email from Laura Pontikes to Catherine Bell dated March 7, 2012, and a letter from [Poster] to Laura Pontikes dated March 6, 2012.” From our review of the record, we find no error in the trial court’s judgment.
. At the heart of all of S & P’s allegations is that the defendants failed to timely provide it with information that would have been beneficial in its negotiations with RSD—information not only about the liability of Chenevert but also as to the conflict presented by that liability. As recognized by the trial, court, Foster sent a letter to Laura Pontikes on the day of his negotiations with RSD, In this letter, emailed and faxed to Laura Pontikes from Foster’s assistant, Foster acknowledged that S & P’s dispute with- RSD arose from defective plans originating from the architect’s sub-consultant regarding the structural steel. Foster also stated that Chene-vert acknowledged that the steel design drawings were in error and that “everyone feels this way.” Foster informed Laura Pontikes that because the sub-consultant worked for the architect, she had a claim against RSD, the sub-consultant, and Chenevert for S & P’s damages suffered as a result of the delay and additional costs. However, Foster reiterated that his law partner, Loeb, had represented Chenevert on the Crocker project for many years, and therefore, BSW could not represent S & P in the event that S & P elected to sue Chenevert as one of the alleged parties at fault. Furthermore, while stating that BSW could defend S & P against RSD and could sue RSD and the sub-consultant on S *561 & P’s behalf, it could not and would not not sue Chenevert. Accordingly, Foster stated that the only way BSW could continue to represent S & P was if S & P agreed to waive any Inactions against Chenevert. However, Foster reiterated that S & P had a viable cause of action against Chenevert that could be pursued.
Accordingly, the contents of this letter detail not only Chenevert and its sub-consultant’s liability but also provides S & P with information that Chenevert and everyone else involved was in agreement that the steel design drawings were in error. Furthermore, Foster reiterated several times that S & P had a claim against RSD, the sub-consultant, and Chenevert. Finally, the letter set forth an actual conflict of interest, requesting a waiver from S & P of any claims against Chenevert in order for BSW to continue representing S & P.
Although Laura Pontikes did not receive the letter until the following day, and as such, admittedly set it aside thinking that its contents were moot following the negotiation and settlement of S & P’s claims with RSD, it was enough notice to excite attention and put a reasonable person on guard to call for inquiry. See Jenkins, 11-1170 at p. 16, 85 So.3d at 621. At the time Laura Pontikes received the letter, she had constructive knowledge of BSW’s failure to provide her with information of Chenevert’s admission that the steel design drawings were in error and the concurrence in that admission of all other parties. Additionally, she was aware of a real conflict between S & P and Chene-vert. Given this information, Laura Pon-tikes had constructive knowledge that the settlement with RSD for a lesser amount was not in S & P’s best interest, and that had S & P known this information, it would not have agreed to settle the E & 0 steel claims with RSD at “a heavy cost.”
Furthermore, despite S & P’s argument to the contrary, the October 3, 2011 email from Haarala to Chenevert, which was not provided to S & P until February 2014, after it obtained new counsel, does not provide any new information. Rather, the email merely details the costs and delays incurred by S & P and directs Chenevert to include all of the information in an E & 0 claim. Furthermore, the |1¾email instructs Chenevert that it is responsible for the evaluation of these claims. However, contrary to S & P’s assertion, the email does not absolve S & P of any liability for delays in completion of the project. As such, this email does not provide any information in addition to that which was already provided in the March 6, 2012 letter.[2]
Accordingly, from our review of the record, we find no error in the trial court’s finding that on March 7, 2012, S & P had knowledge sufficient to put it on notice that BSW was negligent in failing to provide S & P with material information prior to its settlement of the E & O steel claims with RSD. Because S & P did not file its claim for legal malpractice against defendants until August 1, 2014, it was clearly filed more than one-year following the discovery of the alleged act, omission, or neglect and, as such, was perempted in accordance with La. R.S. 9:5605.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Satterfied and Pontikes Construction, Inc.
*562 AFFIRMED.
Holdridge J. concurs. In an exception of peremption, involving conflicting facts and facts and documents that are subject to different interpretations, the mover should introduce testimony, as well as documentary evidence in order to carry their burden of proof. However, since the parties stipulated that this exception would be decided on the briefs, memoranda and attached exhibits, the record does not contain any testimonial evidence. For this reason, I concur in the result.

. On appeal, S & P asserts that an additional act of legal malpractice was defendants’ breach of their ethical and fiduciary duties as attorneys to disclose that their loyalties completely laid with Chenevert and that their loyalty/responsibility to Chenevert materially limited their representation of S & P. However, this “divided loyalties” claim was not raised by S & P in its petition, nor was any argument as to this claim presented to the trial court in opposition to the defendants' exception raising the objection of peremption. Furthermore, we find any claim of fraudulent concealment asserted on appeal was likewise not raised in the trial court. Accordingly, we *560 will not address the merits of these argument on appeal.

. On appeal, S & P attempts to argue that it is the date of the email and not the information that is important. However, it is clear from the language of S & P’s petition and its opposition to defendants’ exception raising the objection of peremption that it is the information that was crucial.