IN RE: GABRIELLA POSESS

NO. 22-CA-18

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 810-962, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

September 28, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

<u>**AFFIRMED**</u>
    **SMC**
    **FHW**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
GABRIELLA POSESS
Zachary R. Christiansen

COUNSEL FOR DEFENDANT/APPELLEE,
DR. CRAIG LEDET, DR. JOHN SALMON, AND UPTOWN PMR
Marc W. Judice
Adam P. Gulotta

**CHEHARDY, C.J.**

In this medical malpractice action, plaintiff challenges the trial court's July 28, 2021 judgment in favor of defendants finding that her claim against them had prescribed and dismissing her lawsuit and medical review panel claims. For the following reasons, finding the trial court did not manifestly err in determining that the discovery rule did not apply to suspend the prescriptive period for plaintiff to file her medical malpractice action against defendants beyond one year from July 2018, we affirm the trial court's judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 17, 2019, plaintiff, Gabriella Posess, filed a medical malpractice complaint with the Division of Administration requesting the formation of a medical review panel pursuant to La. R.S. 40:1231.8. Uptown Premier Medical Rehab, L.L.C. d/b/a Uptown PMR ("Uptown PMR"), Dr. Craig Ledet, D.C, Dr. John Salmon, D.C., A.J. Friedman, M.D. and Robert Kelly, M.D. were named defendants. The complaint alleged malpractice in connection with medical care and chiropractic treatment rendered to plaintiff from November 29, 2017, through May 31, 2018, for injuries she sustained in an automobile accident that occurred on September 26, 2017.

The following facts are taken from the malpractice complaint: Following plaintiff's automobile accident, plaintiff presented to Uptown PMR on September 29, 2017, seeking treatment for her injuries.[1] Dr. Kelly, a general practitioner, initially evaluated plaintiff and obtained her medical history, which included

---

[1] The medical records that were introduced into evidence at the hearing on defendants' exception of prescription indicate that, on referral by her attorney representing her in the motor vehicle accident, plaintiff presented to Uptown PMR with headaches, nausea, mid to upper back pain, fatigue, and a change in her appetite.

congenital hydrocephalus, shunt placement, and surgical repairs to the shunt, performed via endoscopic third ventriculostomies.[2] Following Dr. Kelly's examination and assessment, he prescribed a chiropractic course of therapy. Plaintiff received her first chiropractic adjustment on October 2, 2017, and thereafter, followed up with Dr. Kelly for an additional consult on October 4, 2017.

On October 6, 2017, plaintiff presented to Dr. Friedman, a neurologist at Uptown PMR, for a neurological consultation. At that time, plaintiff reiterated her medical history of congenital hydrocephalus to Dr. Friedman, including the shunt placement, revision, and endoscopic third ventriculostomies. Following the consult, Dr. Friedman recommended that plaintiff continue with chiropractic treatment for her injuries. Plaintiff followed up with Dr. Friedman for a second consultation on November 13, 2017. Due to her continuing complaints of pain and other symptoms, Dr. Friedman recommended that she continue with the prescribed chiropractic treatment.

On November 29, 2017,[3] plaintiff presented to Uptown PMR and was seen by Dr. Salmon for a chiropractic adjustment and continued therapy. Immediately after the adjustment and manipulation, plaintiff experienced extreme nausea, dizziness, and an increase in her headaches. During the chiropractic adjustment and manipulation on December 1, 2017—and at each therapy session thereafter—

---

[2]    Hydrocephalus is an abnormal buildup of fluid in the ventricles (cavities) deep within the brain. This excess fluid causes the ventricles to widen, putting pressure on the brain's tissues. Cerebrospinal fluid is the clear, colorless fluid that protects and cushions the brain and spine. The pressure of too much cerebrospinal fluid associated with hydrocephalus can damage brain tissues and cause a range of brain function problems. An endoscopic third ventriculostomy ("ETV") is a minimally invasive surgical procedure indicated for the treatment of hydrocephalus in which an opening is created in the third floor of the third ventricle using an endoscope placed within the ventricular system through a burr hole allowing the buildup of cerebrospinal fluid to bypass the blockage restoring appropriate cerebrospinal fluid flow. An ETV is an alternative to placement of a cerebrospinal shunt.

[3]    There is a discrepancy in plaintiff's complaint as to the date she underwent the pivotal chiropractic adjustment by Dr. Salmon that commenced the dates of malpractice. The complaint references two dates—November 29, 2017 and November 27, 2017. There were no medical records attached to plaintiff's complaint, however, the medical records filed into the record by defendants at the hearing on the exception of prescription establishes that the correct date is November 29, 2017.

plaintiff verbally expressed that she was experiencing extreme nausea and a worsening of her headaches since the November 29, 2017 adjustment. Because of her ongoing complaints of thoracic and lumbar pain, Dr. Salmon ordered a thoracic and lumbar MRI on May 11, 2018, which revealed "disc dissection at the L5-S1 level" and "compression of the exiting nerve root." Plaintiff discontinued treatment with defendants on May 31, 2018.

On September 21, 2018, plaintiff presented to Dr. Antonio Prats, a neurosurgeon, for a "return consultation." At that time, her chief complaint was of low back pain that started following her September 26, 2017 automobile accident. Plaintiff reported that immediately after the accident in 2017, she noted the onset of thoracic pain, for which she was treated with chiropractic adjustments and manipulations that did not improve her symptoms. Plaintiff advised Dr. Prats that she began to experience low back pain that occurred after the chiropractic maneuvers in November of 2017, and noticed "some discomfort and a funny sensation radiating down the lateral aspect of the right leg." Plaintiff reported that "since she discontinued the chiropractic manipulation," she "noticed rehabilitation." Dr. Prats reviewed the MRI of plaintiff's lumbar spine from May 31, 2018, and noted that "[o]f significance is disc dissection at the L5-S1 level associated with the distal that is eccentric to the right side causing mild compression of the exiting nerve root." Plaintiff claims defendants' malpractice was not discovered until September 21, 2018, presumably as a result of her consultation with Dr. Prats.

Plaintiff alleged the following breaches of the standard of care as to Dr. Salmon:

1. In negligently performing the chiropractic maneuver on November 27, 2017;
2. In utilizing too much force and over extending the spinal column causing L5-S1 disc herniation and nerve root impingement;

3. In performing chiropractic maneuvers on a patient with hydrocephalus; and
4. In continuing to perform chiropractic maneuvers on a patient with hydrocephalus who was displaying signs of neurological complications from congenital hydrocephalus.

As to Dr. Ledet, plaintiff alleged that he deviated from the standard of care:

1. In performing chiropractic maneuvers on [sic] patient with hydrocephalus who was displaying frank signs of a neurological complication from congenital hydrocephalus;
2. In performing chiropractic maneuvers on a patient with hydrocephalus;
3. In failing to do a proper chiropractic work up;
4. In failing to properly supervise other chiropractors for which he was responsible; and
5. In failing to conform to the standard of care.

As to Uptown PMR, plaintiff alleged that it is liable for the acts and omissions of its employed physicians under the doctrine of *respondeat superior* and/or vicarious liability.[4]

On October 7, 2020, Dr. Ledet and Dr. Salmon filed a petition to allot the case for discovery purposes. Thereafter, defendants, Dr. Salmon, Dr. Ledet, and Uptown PMR, filed an exception of prescription, contending they only rendered chiropractic treatment to plaintiff until May 31, 2018. Because her complaint was not filed until September 17, 2019, beyond the one-year limitation of La. R.S. 9:5628(A), they argued plaintiff's claim is prescribed on the face of the complaint. Additionally, defendants argued that based on plaintiff's deposition testimony, she had sufficient information to incite the curiosity of a reasonable person prior to September 21, 2018, putting her on actual, or at the very least, constructive notice of a potential malpractice claim. Thus, defendants contended that, on the face of the complaint, the filing of her malpractice action on September 17, 2019, was too late.

---

[4] As to Drs. Friedman and Kelly, who are not parties to this appeal, plaintiff alleged that they breached the standard of care by ordering chiropractic therapy on a patient with a history of congenital hydrocephalus; by ordering the continuation of chiropractic therapy when she was demonstrating symptoms of neurological complications due to the therapy; by failing to perform a complete neurological workup; and, in failing to comply with the state of care for good neurological practice.

In response, plaintiff argued that the notice standard requires more than mere curiosity, and that, in this case, the three-year "discovery doctrine" in addition to *contra non valentum* was invoked. Plaintiff contends that while she knew she had a chiropractic adjustment that caused her significant problems, it was not until she saw the neurosurgeon, Dr. Prats, in September 2018 that she realized malpractice may have occurred. Consequently, plaintiff contends that on the face of the complaint, based on the discovery rule, her malpractice action against defendants was not prescribed, because it was filed within one year of the date of her discovery and within three years from the date of the alleged act, omission, or neglect.

Defendants' exception came for hearing on June 23, 2021. In support of their exception, defendants offered into evidence a copy of plaintiff's malpractice complaint, a copy of excerpts from her deposition testimony, a copy of plaintiff's petition filed regarding the automobile accident, and copies of plaintiff's medical records from Uptown PMR and Dr. John Ragheb, her longtime neurologist whom she consulted with on July 3, 2018, regarding a significant increase in her symptoms and worsening condition.

In response, plaintiff offered into evidence two pages of testimony from her deposition. At the close of the hearing, the trial judge orally granted defendants' exception, stating:

> I find that because the symptoms increased in the, you
> know, the manner that they did, that it was a significant
> increase. That [plaintiff] was put on notice. That she
> consulted her longtime neurologist, Dr. John Ragheb. So
> I'm going to grant the exception of prescription. I'll
> allow plaintiff 30 days within which to amend. He can
> amend to correct any of the deficiencies.

After the passage of 30 days, because plaintiff did not amend her complaint to correct any deficiencies, the trial judge signed a written judgment on July 28,

2021, dismissing plaintiff's complaint against Dr. Ledet, Dr. Salmon, and Uptown PMR with prejudice. It is from this judgment that plaintiff now appeals.

**ISSUES PRESENTED FOR REVIEW**

This appeal presents two issues for review: (1) whether plaintiff's complaint is prescribed on its face; and (2) whether the discovery rule set forth in La. R.S. 9:5269(A) applies to the facts presented in this case and, if so, whether plaintiff's complaint was filed within one year from the date of the discovery of defendants' alleged malpractice.

**DISCUSSION**

The rules governing the time within which a medical malpractice action can be brought are clearly set forth in La. R.S. 9:5628(A), which provides, in pertinent part:

> No action for damages for injury or death against any physician, chiropractor … whether based upon tort, breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The statute is a tripartite prescription provision, fixing (1) a one-year general rule, for damages that are immediately apparent, (2) a one-year discovery rule, for damages that are latent, and (3) an overall limitation of three years. *Guffey v. Lexington House LLC*, 18-1568 (La. 5/8/19), 283 So.3d 1001, 1006-1007; *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So.2d 1261, 1267.[5]

---

[5] Despite the strict construction of prescriptive statutes to maintain actions rather than defeat them, courts of this State have never disregarded the discovery rule in favor of a general, three-year limitation. Such an approach would, in essence, negate the general rule and the discovery rule in favor of the overall limitation. It would disregard the tripartite structure recognized in *Guffey v. Lexington House LLC*, *supra*, and *Carter v. Haygood*, *supra*. To the extent plaintiff contends that her complaint was timely because it was filed within the three years of the alleged harm, we reject that contention.

The discovery rule is an important portion of the jurisprudential doctrine of *contra non valentum. Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 509. Under this rule, prescription begins "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.* at 510. A prescriptive period begins to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit, as long as he has constructive knowledge of such facts. Constructive knowledge is "whatever notice is enough to excite attention and put the injured person on guard and call for inquiry," which is tantamount to notice of "everything to which a reasonable inquiry may lead." *Id.* at 510-11; *Jenkins v. Starns*, 11-1170 (La. 1/24/12), 85 So.3d 612, 617. Thus, a plaintiff is imputed with whatever knowledge a reasonable inquiry or investigation would reveal. *Campo*, 828 So.2d at 511. The ultimate issue in determining constructive knowledge is the "reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of defendant's conduct. *Id.* Prescriptive statutes are strictly construed in favor of maintaining a plaintiff's cause of action. *Correro v. Ferrer*, 16-0861 (La. 10/28/16), 216 So.3d 794, 796; *Borel v. Young*, 07-0419 (La. 11/27/07), 989 So.2d 42, 64.

According to plaintiff's complaint, the first act of alleged malpractice occurred on November 29, 2017, when Dr. Salmon "negligently" performed a chiropractic maneuver by using excessive force causing L5-S1 disc herniation and nerve root impingement. The complaint states that the last act of malpractice by defendants occurred on May 31, 2018, when she ceased chiropractic treatment. So, the one-year prescriptive period expired, at the earliest, on November 29, 2018, and, at the latest, on May 31, 2019. Plaintiff's malpractice complaint was filed on September 17, 2019. Thus, the complaint is prescribed on its face unless it was reasonable for plaintiff to be unaware of the malpractice until less than one year

before September 17, 2019. *See In re Panel of Heath*, 21-01367 (La. 6/1/22), -- So.3d --, 2011 WL 2339097, *3.

### Burden of Proof

Ordinarily, the exceptor bears the burden of proof at trial of the peremptory exception of prescription. *Campo*, 828 So.2d at 508; *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361 (La. 1992). However, if the action is prescribed on the face of the pleadings, the burden shifts to the plaintiff to show it is not prescribed. *Williams v. Sewerage & Water Board of New Orleans*, 611 So.2d 1383, 1386 (La. 1993). A petition is not prescribed on its face if it is filed within one year of discovery and particularly alleged facts show the patient was unaware of malpractice before that date, so long as the filing delay was not willful, negligent, or unreasonable. *Campo*, 828 So.2d at 509. Whether the complaint is prescribed on its face is purely a question of law, subject to *de novo* review. *See Heath*, 2011 WL 2339097 at *3; *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So.3d 368, 373.

To determine who bears the burden of proof, we must answer the following questions: (1) was the complaint filed within one year of the date of the alleged acts of malpractice; if not (2) was the complaint filed within one year of the date of discovery of the alleged acts of malpractice. *Heath*, 2022 WL 2339097 at *3. If plaintiff relies upon discovery as the trigger of prescription, the following must be answered: (1) did plaintiff allege with particularity that she was unaware of the malpractice prior to the alleged date of discovery; and (2) was plaintiff's delay in discovering the malpractice reasonable. *Id*. The petition must state with particularity the act of alleged malpractice and the date it was discovered, and these questions must be answered solely upon the allegations of the complaint. *Id*.

Paragraph two (2) of plaintiff's complaint states, "The dates that we contend the malpractice occurred are November 29, 2017 through May 31, 2018. ... The

malpractice was not discovered until September 21, 2018." This allegation sets forth no facts establishing the alleged acts of malpractice, which plaintiff contends occurred between November 29, 2017, and May 31, 2018, or why the alleged acts of malpractice were not discovered until September 21, 2018. Thus, this allegation does not support extending the commencement of prescription to the alleged date of discovery.

Paragraph six (6) of the complaint states that plaintiff presented to Dr. Antonio Prats for a return consultation on September 21, 2018. The paragraph contains the following recitation of an excerpt from Dr. Prats' medical notes from that date summarizing the history as provided to him by plaintiff:

> 23 year 5 month old female who comes to office with a chief complaint of: Low Back Pain. This pleasant young lady presents with low back pain that started after a motor vehicle accident that occurred in September of last year. At that time, she immediately noted the onset of thoracic pain. For this problem she was treated with chiropractic manipulations which did not improve her symptoms and according [*sic*] patient, started to complain of law back pain that occurred with the maneuvers. Following that, she also noticed some discomfort and a funny sensation radiating down the lateral aspect of the right leg. Initially, she placed the intensive pain at 8/10 and since she discontinued the chiropractic manipulation and has noticed rehabilitation … She underwent an MRI of the lumbar spine are [sic] reviewed with her mother. Of significance is disc desiccation at the L5-S1 level associated with the distal that is eccentric to the right side causing mild compression of the exiting nerve root.

Plaintiff contends that it was during her consultation with Dr. Prats on September 21, 2018, that she discovered defendants had committed malpractice, because they performed chiropractic adjustments and manipulations on her with knowledge of her congenital hydrocephalus, and continued to do so when she displayed signs of neurological complications from congenital hydrocephalus. However, there is nothing contained in the recitation of Dr. Prats' notes where he

either suggests or opines that because of plaintiff's congenital condition, she should never have received chiropractic treatment, or that defendants' care of plaintiff was inappropriate or deviated from the standard of care in any way. Plaintiff did not attach to her complaint an affidavit from Dr. Prats, his medical records, or any report that he may have rendered, establishing these facts. Consequently, we find that this allegation does not allege with sufficient particularity that on September 21, 2018, plaintiff actually discovered defendants' alleged malpractice.

Rather, the allegation in paragraph 6 requires us first to infer that on September 21, 2018, Dr. Prats opined that it was a deviation from the standard of care for defendants to perform chiropractic adjustments and manipulations on a patient who presents with a history of congenital hydrocephalus, and that he communicated this to plaintiff. It further requires us to infer that Dr. Prats concluded and advised plaintiff that her herniated disc and nerve root impingement, and the significant increase in nausea, and worsening headaches were *all* caused by the chiropractic adjustments and manipulations she received from November 27, 2017 through May 31, 2018, which defendants never should have performed knowing of her congenital hydrocephalus. *Campo* instructs that inferences cannot be relied upon. Facts must be alleged with *particularity* to avoid the burden of proof shifting from the mover to plaintiffs.

Moreover, even if we were to accept the inference that plaintiff was unaware of the possible malpractice until September 21, 2018, the complaint sets forth no allegations relative to the reasonableness of her delay in discovery.

At the close of the hearing on defendants' exception of prescription, the trial judge stated that while he was sustaining the exception, he would allow plaintiff thirty days to amend her complaint to correct any of the deficiencies. Thus, while plaintiff was given the opportunity to amend her complaint to allege with

specificity how her September 21, 2018 consultation with Dr. Prats resulted in her first discovering defendants' alleged malpractice, and to set forth reasons justifying the delay, she did not. Consequently, we find the complaint is prescribed on its face. The burden of proof on the exception of prescription rests with plaintiff. *See Heath*, 2022 WL 2339097 at *4.

### *Did plaintiff carry her burden of proof?*

On appeal, plaintiff alleges the trial court erred in finding that she did not present sufficient evidence to establish that prescription had not run in this case. We disagree.

While review of whether the complaint is prescribed on its face is a question of law, subject to *de novo* review, when evidence is considered on the merits of an exception of prescription and factual determinations are made, a manifest error–clearly wrong standard of review is applied. *See Mitchell*, 333 So.3d at 373-74. A trial court's factual findings will not be upset unless they are manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989).

To avoid prescription, plaintiff must prove she discovered the possible malpractice less than one year before suit was filed and that the delay in discovery was reasonable. To carry her burden that she first learned that malpractice had occurred during her September 21, 2018 consultation with Dr. Prats, plaintiff relied solely on the allegations of her complaint and on two pages of her deposition testimony, where she testified:

> Q. … has anyone criticized any of the chiropractors at Uptown PMR?
> A. Dr. Prats.
> Q. Okay. Tell me what Dr. Prats told you?
> A. That because I have hydrocephalus they should never have treated me and that it can be very dangerous for someone with hydrocephalus to get chiropractic manipulations because it impacts cerebral spinal fluid.
> Q. When did he tell you that?
> A. At that appointment that should be noted in my records. I don't remember the date.

Q. Okay

A. But he said the neurologist who they had me see on site before they treated me should have immediately not approved me for chiropractic care because of my history.

Q. Did you – did he say anything specific about either Dr. Salmon or Dr. Ledet?

A. He didn't know anyone's names. He was just saying that they shouldn't have treated me and that's probably why I consistently experience like nausea after adjustments and the headaches and everything and that it's probably related to my hydrocephalus and that it just would have been better to not have me do chiropractic care but instead just physical therapy.

Q. And Dr. Prats, and this is in your complaint. There's a mention of disc at L5-S1, disc desiccation, if I'm saying that correctly.

A. Uh-huh.

Q. Did he attribute the disc problem to the treatment or to your car accident?

A. He said if I'm remembering correctly, he said that that adjustment could lead to an injury of the disc in that location.

Q. But did he differentiate that as opposed to the car accident?

A. Yeah, especially noting like my back pain and the increase in nausea and the headaches -- said that's likely what occurred.

As previously noted, at the hearing, plaintiff did not introduce any affidavit, medical records, or report from Dr. Prats to substantiate her deposition testimony as to what he actually told her on September 21, 2018, regarding the relationship between her injuries, her congenital hydrocephalus, and the chiropractic care she received from defendants. Additionally, in her complaint, plaintiff alleged that Dr. Salmon deviated from the standard of care by negligently utilizing excessive force when adjusting her lumbar spine on November 29, 2017, causing a herniated disc and nerve root compression. However, while plaintiff testified that Dr. Prats told her "that that adjustment could lead to an injury of the disc in that location," it is unproven whether Dr. Prats related the lumbar injury allegedly caused by the chiropractic treatment she received to plaintiff's congenital hydrocephalus, as

opposed to the possibility of such an injury occurring to any patient in the general population who receives chiropractic treatment.

The record also contains testimony from plaintiff's deposition—which was introduced at the hearing by defendants and *not* mentioned by plaintiff—that she had previously consulted with Dr. Prats in *May of 2018* concerning her worsening headaches and increased nausea because she "was concerned maybe [she] had an issue with hydrocephalus."[6] Curiously, plaintiff abruptly ceased chiropractic treatment with defendants on May 31, 2018, the same day she underwent an MRI of her lumbar spine revealing the herniated disc at L5-S1 and the nerve root compression.

According to defendants, prescription, at the latest, began on July 3, 2018. The trial court agreed. On this date, plaintiff—armed with knowledge that she had sustained a herniated disc and nerve root impingement at L5-S1, and because of her ongoing complaints of increased nausea and worsening headaches since the November 29, 2017 chiropractic adjustment by Dr. Salmon—presented to Dr. John Ragheb, a neurologist, to review the results of her lumbar MRI and to address her concern about what was causing her to experience a *significant* worsening of her condition. She reported that she was tired daily and unable to function due to her low back pain. In sustaining defendants' exception of prescription, the trial court found that to the extent the discovery rule applied to suspend prescription for her malpractice action against defendants, plaintiff "was put on notice" at the very latest on July 3, 2018, when, due to the significant increase in her symptoms, "she consulted her longtime neurologist, Dr. John Ragheb."[7]

---

[6] There are no medical records from Dr. Prats' consultation with plaintiff occurring in May of 2018.

[7] We note that the July 3, 2018 discovery date was within the one-year period from the onset of plaintiff's symptoms, which, according to plaintiff's testimony, began immediately following the "overly aggressive" chiropractic adjustment performed on her by Dr. Salmon on November 29, 2017. We further note that September 21, 2018, the date plaintiff alleges was the date she first discovered defendants had

The law of prescription does require that the patient be informed by a medical practitioner of possible malpractice before the commencement of the running of prescription. *See Mitchell*, 333 So.3d at 381. After reviewing the record in its entirety, and considering the particular facts presented in this case, we find that plaintiff failed to carry her burden of proving that she reasonably discovered the possible malpractice one year before her complaint was filed. Specifically, we find that plaintiff's uncorroborated hearsay testimony was insufficient to carry her burden of proving that the discovery rule applies in this case to suspend the prescriptive period for her claim against defendants for their alleged malpractice occurring between November 29, 2017, and May 31, 2018, to September 21, 2018—we point out that in the deposition testimony that plaintiff introduced into evidence at the hearing, she failed to testify *when* her visit with Dr. Prats occurred and, thus, she failed to present *any* evidence concerning an alleged September 2018 visit with Dr. Prats. We further conclude that plaintiff failed to carry her burden of proving that her delay in discovery was reasonable; she presented no evidence or testimony in this regard.

The trial court did not manifestly err and was not clearly wrong in finding that, by at least July 3, 2018, after consulting with her longtime neurologist, Dr. Ragheb, plaintiff had sufficient information to incite her attention and put her on guard as to potential malpractice; therefore, prescription began to run at least by that date. Pursuant to La. R.S. 9:5268(A), plaintiff had one year from this discovery date to file her complaint. Her complaint filed on September 17, 2019, over one year later, was simply too late. Plaintiff's malpractice complaint was untimely filed and had prescribed.

---

committed malpractice, was also within one year from the November 29, 2017 negligent chiropractic adjustment.

For the foregoing reasons, we affirm the trial court's judgment sustaining the exception of prescription filed by Uptown PMR, Dr. Craig Ledet, and Dr. John Salmon.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 28, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-18

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
ZACHARY R. CHRISTIANSEN            ADAM P. GULOTTA (APPELLEE)
(APPELLANT)

**MAILED**
MARC W. JUDICE (APPELLEE)
ATTORNEY AT LAW
926 COOLIDGE BOULEVARD
LAFAYETTE, LA 70503