KURT CROSBY; THE TARA E.    *      NO. 2022-CA-0395
CROSBY TRUST; THE
ALLISON CROSBY TRUST;     *
THE TARA E. CROSBY TRUST       COURT OF APPEAL
2; THE ALLISON CROSBY     *
TRUST 2; THE LAUREN       FOURTH CIRCUIT
GUIDRY TRUST; THE AARON     *
GUIDRY TRUST; AND       STATE OF LOUISIANA
BERTUCCI CONTRACTING    * * * * * * *
COMPANY, LLC

VERSUS

WAITS, EMMETT, POPP &
TEICH, LLC; RANDOLPH
WAITS; JOHN EMMETT; AND
JORDAN TEICH

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01609, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge
Paula A. Brown)

David P. Vicknair
Caitlin B. Carrigan
SCOTT VICKNAIR, LLC
909 Poydras Street, Suite 2025
New Orleans, Louisiana 70112

      COUNSEL FOR PLAINTIFF/APPELLANT

Gus A. Fritchie, III
Christopher H. Irwin
IRWIN FRITCHIE URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130

      COUNSEL FOR DEFENDANTS/APPELLEES

           **AFFIRMED**
           **November 21, 2022**

RLB
RML
PAB

This is a legal malpractice action. Plaintiff, Bertucci Contracting Company, LLC ("BCC")[1], appeals the March 15, 2022 judgment maintaining an exception of peremption filed by defendants, Randy Waits ("Waits"), John Emmett ("Emmett"), Jordan Teich ("Teich"), the law firm of Waits, Emmet, Popp & Teich, LLC (collectively "WEPT"), and Continental Casualty Company. The judgment dismissed BCC's legal malpractice "transactional claims" filed against the defendants[2] and dismissed all claims against Emmett, with prejudice. For the reasons that follow, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The dispute between the parties closely involves a separate action, *NASDI, Inc. v BCC* ("NSADI suit"), litigated in the 24th Judicial District Court beginning in 2012. The background of the NASDI suit is pertinent to our review of this exception of peremption, and is therefore detailed below.

---

[1] This Court previously affirmed the trial court's December 10, 2020 judgment granting defendants' exception of no right of action, dismissing the Crosby plaintiffs from this action, finding that as shareholders of BCC, they did not have a personal right to sue for malpractice on behalf of BCC. *See Crosby v Waits, Emmett, Popp, Teich, LLC*, 21-0054 (La. App. 4 Cir. 10/6/21), ___ So.3d ___, ___ 2021 WL 4592822. Thus, BCC is the plaintiff in this action.

[2] By order dated May 28, 2021, individual defendants Waits and Teich were dismissed from this litigation pursuant to a motion to dismiss filed by BCC.

1

NASDI, Inc. entered into a contract with the State of Louisiana to demolish the old Twin Span Bridge over Lake Pontchartrain after it was damaged during Hurricane Katrina. BCC contracted with the State of Louisiana to turn the demolished bridge material into marine mattresses for use in a shoreline protection project. NASDI, Inc. also acted as BCC's subcontractor on the project, requiring NASDI, Inc. to break down the demolished bridge material into smaller units in order for BCC to construct the marine mattresses.

BCC put NASDI, Inc. and its surety on notice of default under the subcontract due to an alleged non-performance. After an investigation, the surety paid BCC approximately $2.2 million on the bond. In October 2012, NASDI, Inc. sued BCC alleging that BCC failed to pay balances due under the subcontract. BCC reconvened, alleging that NASDI, Inc. breached the subcontract by failing to properly process the demolished bridge material. WEPT, predominantly Waits and Teich, represented BCC in the NASDI suit, which remained pending until 2018.

In late 2014, the original Crosby plaintiffs, particularly Kurt Crosby, on behalf of the Crosby family companies[3], began negotiations to purchase BCC, which was owned by Tony Zelenka and the Zelenka family trusts. Emmett, an attorney with WEPT, advised Kurt Crosby in connection with the BCC contract negotiations. Emmett had also represented Kurt Crosby in both personal and business matters for over twenty-five years. During the negotiations, because Emmett represented the Crosby interests in purchasing BCC, and WEPT represented BCC in the NASDI suit, Emmett requested a conflict waiver from Dan

---

[3] Kurt Crosby and the Crosby family owned numerous businesses related to marine transport and dredging.

Zelenka, BCC's special counsel[4] and Tony Zelenka's brother.  Although Dan Zelenka agreed, it appears that the conflict waiver was never perfected.

In January 2015, the Crosby family purchased 75% of BCC ("Initial Transaction").  Pursuant to the agreement in the Initial Transaction, Tony Zelenka retained 100% of the net recovery in the pending NASDI suit as well as 100% of the risk, subject to a $5.169 million dollar cap.  The agreement also provided that Tony Zelenka would stay on as manager of BCC and could force a sale of the remaining 25% of BCC to the Crosby family in the event Tony Zelenka was fired as manager.

Mediation in 2015 between NASDI, Inc. and BCC in the NASDI suit was unsuccessful.  NASDI, Inc. rejected BCC's demand for payment and insisted on full compensation under the contract.

In December 2015, Tony Zelenka was terminated as manager of BCC.  In response, he executed his right to force a sale of the remaining 25% of BCC to the Crosby family.  In January 2016, the Crosby family purchased the remaining 25% of BCC from Tony Zelenka and the Zelenka family trusts ("Final Transaction").  Emmett participated in the contract negotiations on behalf of the Crosby family.  The agreement was silent as to any change in the recovery/risk in the ongoing NASDI suit, *i.e.*, Tony Zelenka maintained 100% of the recovery and the financial risk associated with the litigation.  It also appears that BCC was funding the litigation costs in the NASDI suit at that time.  Emmett expressed his concern on this issue to Kurt Crosby's representative and CFO, Farrel Trosclair ("Trosclair") on February 23, 2016.  Trosclair relayed this information to Tony Zelenka.

---

[4] Dan Zelenka testified in his deposition that during most of the NASDI litigation, he was physically present in the WEPT office; he rented office space from WEPT.  He further explained that he was counsel of record in the litigation, representing BCC along with WEPT.

On March 4, 2016, in negotiation to finalize Tony Zelenka's employment contract release, Tony Zelenka sent three proposed options to Trosclair, regarding the recovery/risk in the NASDI suit, as follows:

a) Leave it as written which comports to the original sale and employment agreements; or

b) With respect to the NASDI litigation, should any recovery be made by Bertucci, Bertucci will issue a payment to Zelenka equal to one half of the net amount of any recovery made after payment of legal and litigation expenses incurred after January 1, 2015. However, Zelenka's indemnity obligation to Bertucci is reduced to one half of any amount that Bertucci is ordered to pay as a result of the litigation; or

c) With respect to the NASDI litigation, Bertucci retains one hundred percent of the amount of any recovery made; however, Zelenka shall have no indemnity obligation to Bertucci for any amount that Bertucci is ordered to pay as a result of the litigation.

Trosclair sought Emmett's advice on the proposed options. Very shortly thereafter, Emmett responded:

It is unlikely that Bertucci owes NASDI anything. NASDI's bonding company paid Bertucci $2.2 million. I don't think they would have done that if NASDI had performed. That being said, ***I'm inclined to go with option b*** to let both Bertucci and Zelenka have skin in the game. Tony may lose interest if you go with option b [*sic*].[5] You need him as a witness and as a point man in the case. Option a, as mentioned, appears to me to be unfair. (Emphasis added).

Emmett also asked Trosclair to "keep this confidential from Tony and other Zelenka affiliated people." After receiving Emmett's email, Trosclair relayed the information to Kurt Crosby by telephone. Within minutes, Kurt Crosby directed Trosclair to accept Emmett's advice to select option b ("50/50 Option"). Thereafter, the 50/50 Option was incorporated into a settlement agreement with Tony Zelenka that was executed on March 14, 2016.[6]

---

[5] It appears this should have read option "c".
[6] The agreement was later amended on April 6, 2016, with no significant changes.

The 50/50 Option turned out to be financially detrimental to BCC and the Crosby family interests, as the February 15, 2018 jury verdict in the NASDI suit rendered a substantial judgment in favor of NASDI, Inc. and against BCC on the breach of contract claims. BCC's litigation costs were also quite substantial.

On February 12, 2019, (less than one year after the verdict in the NASDI suit and less than three years after Emmett's March 4, 2016 advice to take the 50/50 Option) BCC filed suit against the WEPT law firm, and individually against Waits, Emmett, and Teich, alleging legal malpractice in the handling of the "transactional claims," *i.e.*, the contract negotiations between the Crosby family and BCC.[7]

Specifically, the original and amended petitions allege that WEPT and/or Emmett failed to disclose the substantial likelihood of a significant loss in the NASDI suit, and misrepresented the likely costs of litigating the NASDI suit. The petition further alleges that Emmett improperly gave advice without speaking to other members of WEPT or anyone in the Zelenka camp regarding the NASDI suit. BCC asserts that Kurt Crosby would not have accepted Emmett's advice for the 50/50 Option had he known that the Zelenka affiliated people had serious reservations about the NASDI suit, and were aware that the suit bore serious risk. Finally, it is alleged that these acts of malpractice were first discovered, at the earliest, on February 15, 2018, when the jury rendered its verdict in the NASDI suit.

In response to the petition for damages, WEPT filed an exception of peremption as to BCC's legal malpractice transactional claims, and a motion for

---

[7] The petition also alleged WEPT's malpractice in the handling of trial of the NASDI suit. Those allegations are not a part of this appeal.

partial summary judgment on the legal malpractice claims raised in connection with the actual trial of the NASDI suit. The matters were heard on February 25, 2022, with the introduction of evidence from the parties. Judgment was rendered March 15, 2022, granting WEPT's exception of peremption, dismissing BCC's legal malpractice transactional claims and dismissing all claims against Emmett, with prejudice.[8] The judgment further ordered that the granting of the exceptions of peremption was deemed to be a final judgment pursuant to La. C.C.P. art. 1915(B). BCC's timely appeal of the granting of the peremptory exception of prescription on the transactional claims is now at issue before this Court.

## LAW AND ANALYSIS

### *Standard of Review*

As recently reiterated by this Court in *Hawkins v. Liskow and Lewis, APLC*, 2021-0198, p. 3 (La. App. 4 Cir. 3/11/22), 336 So.3d 534, 536:

> A peremptory exception generally raises a purely legal question. *Wells Fargo Fin. La., Inc. v. Galloway*, 2017-0413, p. 7 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 799-800. When, as here, evidence is introduced at the hearing on a peremptory exception of peremption, the trial court's findings of fact are reviewed under the manifest error/clearly wrong standard of review. *Lomont v. Bennett*, 2014-2483, p. 8 (La. 6/30/15), 172 So.3d 620, 627 (citing *Rando v. Anco Insulations Inc.*, 2008-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082). If those findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception of prescription. *Barkerding v Whittaker*, 2018-0415, p. 14 (La. App. 4 Cir. 12/28/18), 263 So.3d 1170, 1180 (citing *Rando v. Anco*

---

[8] The judgment also denied WEPT's motion for partial summary judgment on BCC's malpractice claims raised in connection with the trial of the NASDI suit. WEPT filed a supervisory writ application from that ruling, which this Court denied. *Crosby v Waits, Emmett, Popp & Teich, LLC,* 2022-C-0278 (La. App. 4 Cir. 6/1/22), unpub.

*Insulations, Inc.,* 2008-1163, p. 20 (La. 5/22/99), 16 So.3d 1065, 1082).  If

prescription is evident on the face of the petition, the burden shifts to the plaintiff

to show the action is not prescribed.  *Id*.

### Legal Malpractice Peremption

Pursuant to La. 9:5605(A), a legal malpractice claim shall be filed:

> within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Both the one-year and three-year periods of limitations are, by statute,

characterized as peremptive in nature "within the meaning of Civil Code Article

3458, and in accordance with Civil Code Article 3461, may not be renounced,

interrupted, or suspended."  La. R.S. 9:5605(B).  As provided by La. C.C. art.

3458, "Peremption is a period of time fixed by law for the existence of a right.

Unless timely exercised, the right is extinguished upon the expiration of the

peremptive period."

Considering the peremptive period in a legal malpractice action, our

Supreme Court has held:

> The "date of discovery" from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.... Put more simply, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiff's position.

*Teague v. St. Paul Fire and Marine Ins. Co.*, 2007-1384, p. 13 (La. 2/1/08), 974

So.2d 1266, 1275.

In *Jenkins v. Starns*, 2011-1170, p. 15 (La. 1/24/12), 85 So.3d 612, 621,

the Supreme Court summarized its holding in *Teague* by stating:

> [P]eremption commences to run in a legal malpractice case when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. A claimant's mere apprehension something may be wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence his problem may have been caused by acts of malpractice. The Court further held even if the client is aware an undesirable result has developed arising out of the representation, peremption will not run as long as it was reasonable for the plaintiff not to recognize the result might be due to malpractice.

On appeal in the present case, BCC asserts that the trial court erred in finding that the alleged legal malpractice regarding Emmett's March 4, 2016 advice (the 50/50 Option)[9], and the failure of Emmett and WEPT to secure a conflict waiver from the firm's adversely positioned clients at the same time, were perempted pursuant to La. R.S. 9:5605. The crux of BCC's argument is that the date of discovery of the alleged malpractice was February 15, 2018, the date of the jury verdict. Thus, it is argued that the petition, filed February 12, 2019, was filed less than one year from the date of discovery and within three years from the date of the alleged malpractice.

In support of this argument regarding the date of discovery, BCC contends that the "Crosby-side" of BCC (mainly Kurt Crosby, Trosclair and certain Crosby family members working in the Crosby companies) had no way of knowing that Emmett's advice was malpractice prior to the adverse result rendered in the jury verdict. Until then, Emmett's advice was not questioned; Kurt Crosby trusted Emmett. More specifically, BCC asserts that the Crosby-side of BCC did not

---

[9] We note that BCC's petitions and its opposition to the exception of peremption also reference the Initial Transaction and the Final Transaction. However, the focus of BCC's malpractice action is the advice given for the 50/50 Option.

possess a totality of facts that would reasonably put them on notice that the 50/50 Option was going to be a problem, particularly given Emmett's explicit directive that they not discuss the matter with Tony Zelenka or the Zelenka affiliated people. It is BCC's position that people in the Zelenka camp were well aware of the substantial risks involved in the NASDI suit. However, as explained in his deposition, Kurt Crosby did not tell anyone about the advice on the 50/50 Option because Emmett told him not to do so. Kurt Crosby also testified that he trusted Emmett's opinion - as stated in the March 4, 2016 email, that "[i]t is unlikely that [BCC] owes NASDI anything." Finally, as stated in the petition, Kurt Crosby also believed Emmett's advice to be sound because Emmett "had a direct line" to WEPT, who was handling the NASDI suit.

WEPT counters that the date of discovery would have occurred on March 4, 2016, the date that the alleged "bad advice" was given, because at that time, the Crosby-side of BCC knew or should have known the financial risk involved if BCC were to lose the NASDI suit. WEPT submits that BCC, through Kurt Crosby and Trosclair, received periodic updates from BCC's Controller Gene Simon ("Simon") and others about the status of the NASDI suit starting shortly after the Crosby family obtained full ownership of BCC in the Spring of 2016.

Additionally, WEPT argues that Emmett's alleged failure to secure a conflict waiver at the time he participated in the transactions for Kurt Crosby would be perempted because that action, or inaction, also occurred on or before March 4, 2016.[10] As a result, WEPT maintains that the trial court properly granted the exception of peremption on the issue of the conflict waiver.

---

[10]WEPT argues that BCC raises the failure to obtain a conflict waiver for the first time on appeal. However, the trial court record demonstrates that BCC briefed this issue in opposition to WEPT's exception of peremption.

Upon review of the record, we find no manifest error in the trial court's judgment granting the exception of peremption. More specifically, we find that BCC's petition was *not* filed within one year from the date of discovery of the alleged malpractice, *i.e.*, the March 4, 2016 advice given on the 50/50 Option and the failure to secure a conflict waiver.

In response to the options offered by Tony Zelenka on the indemnity issue, Emmett said he was inclined to go with option b. Kurt Crosby, within just a few minutes, agreed to take that option. Clearly, Kurt Crosby trusted Emmett and relied on his advice. However, it appears that Kurt Crosby never investigated the status of the NASDI suit before accepting the advice, and he never requested that Emmett, or anyone else on his team investigate further.

Kurt Crosby stated in his deposition that he never received updates on the NASDI suit and never asked anyone to report directly to him on the case; he did not follow the trial. Trosclair confirmed in his deposition testimony that Kurt Crosby never asked him to investigate how the NASDI suit was going.

Kurt Crosby also stated in his deposition that prior to the trial, he met with Tony Zelenka at the Windsor Court Hotel in order to make sure Tony Zelenka would be able to cover his 50% in connection with the indemnity agreement. At that time, he never asked Tony Zelenka how the litigation was going.

BCC claims that it would have been nearly impossible for a lay person, such as Kurt Crosby or Trosclair to know that Emmett's advice was negligent prior to the verdict in the NASDI suit. The record does not support that position. It should have been obvious to all concerned that the 50/50 Option was favorable to Tony

10

Zelenka who, at that time, was adverse to BCC and the Crosby family interests. Tony Zelenka testified in his deposition that he knew it was a bad deal for BCC.

Simon began working for BCC in 1990, and was a longtime close friend of Tony Zelenka. As Controller for BCC, Simon reported to Trosclair after the Crosby family purchased BCC from the Zelenka family. Simon testified by deposition that he thought the risk of loss in the NASDI suit had become apparent to everyone involved. He thought more likely than not that the case was going to go the wrong way, *i.e.*, against BCC. Simon further explained that after the failed mediation in 2015, it was apparent that NASDI wanted 100% recovery and that they were going to go the distance – meaning, it was going to be expensive to litigate and that BCC had significant risk.

Simon did not know about the 50/50 Option until after it was agreed to by Kurt Crosby and Tony Zelenka. He thought it was a bad idea that would be damaging for BCC. Simon did not share his opinion with Trosclair because, as he said, it was "water under the bridge" by that time - it was "unchangeable." Simon did not know the 50/50 Option was based on Emmett's advice until after the jury verdict.

Simon stated that he had frank conversations with Aaron Guidry (Kurt Crosby's nephew and part owner of BCC through the Crosby family trusts) about the 50/50 Option being a mistake. [11] Simon did not remember if he gave updates to Trosclair on the NASDI suit. However, Simon identified a July 5, 2016 email to Trosclair and Myles Cheramie (Kurt Crosby's son-in-law, working as an accounting assistant under Trosclair), wherein he informed them "I do not want

_____

[11] Guidry was in law school at the time. He occasionally performed work at BCC's office and attended some of the NASDI trial.

anyone to be surprised. This litigation is horribly expensive. (I personally liked it better when this was not a company [BCC] exposure.)" The email further stated that the legal bill from WEPT for the NASDI suit for April and May was "[a]nother $100K." Simon explained that the email was to put his boss, *i.e.*, Trosclair, on notice of how much money they were spending so they would know what to expect going forward as a result of the change in the indemnity provision (meaning the 50/50 Option).

Based on the facts set forth in the record, we find that BCC knew or should have known prior to the jury verdict that Emmett's March 4, 2016 advice on the 50/50 Option was not in BCC's best interest. More specifically, the record demonstrates that BCC had constructive knowledge of the alleged malpractice over a year before the suit was filed and, therefore, BCC was subject to the commencement of peremption by virtue of such knowledge. Regarding the conflict waiver, it is evident that a conflict existed between Tony Zelenka, BCC, the Crosby family interests, and their respective lawyers (Dan Zelenka, Emmett and WEPT) as early as December 2014, when the contract negotiations began between Kurt Crosby and Tony Zelenka for the purchase of BCC. Emmett specifically recognized the need for a waiver at that time, yet a waiver was never perfected. As any alleged malpractice regarding the conflict waiver occurred as early as 2014, this claim is also perempted. Accordingly, we cannot conclude that the trial court was manifestly erroneous in finding that BCC's claim is barred by peremption pursuant to La. R.S. 9:5605(A).

**CONCLUSION**

After a thorough review of the record, we find no error in the trial court's March 15, 2022 judgment, maintaining the exception of peremption, dismissing all

transactional claims of BCC, and dismissing all claims against Emmett, with prejudice.  Accordingly, we affirm.

**AFFIRMED**